UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN GABRION,

        Movant,

                                   Case No: 1:15-CV-447

v.

                                   Hon. Robert Holmes Bell

UNITED STATES OF AMERICA,          U.S. District Judge

        Respondent.

_____/

**GOVERNMENT'S RESPONSE TO GABRION'S MOTION TO RESTRICT ACCESS
TO HIS SECTION 2255 ATTACK UPON HIS CONVICTION AND SENTENCE**

Gabrion has attacked his conviction and death sentence in an action filed under

28 U.S.C. § 2255.  He requests that his petition be kept a secret from the public.  (R.3:

Motion to File 2255 Under Restricted Access.)  The government opposes this request.

First, there is no rule or precedent that permits Gabrion's request.   Section 2255

petitions have their own set of Rules, and also direct district courts to import the Rules

of Civil and Criminal Procedure to the extent that they do not violate the law, or

contradict the special rules governing Section 2255 actions.  Rules Governing § 2255

Cases, Rule 12.  Rule of Civil Procedure 26(c) permits protective orders to be filed in the

appropriate circumstances.  However, because sealing any part of court proceedings is

disfavored, that Rule is used sparingly and only when good cause has been shown to

seal a particular document.  *Proctor and Gamble Co. v. Banker's Trust Company*, 78 F.3d

219, 227 (6th Cir. 1996); *Brown and Williamson Tobacco Corp v. FTC*, 70 F.2d 1165, 1177 n.6

(6th Cir. 1983).  On the criminal side, Rule 49.1(a) provides for the redaction of personal

identifying information and other protected information from pleadings.  However,

Section 2255 pleadings are explicitly not included within the scope of this rule.  Fed. R.

Crim. P. 49.1(b)(6).   Gabrion's request finds no support in these rules.

The law is decidedly against his request.  Historically, there has been a

presumption of openness and public access to judicial proceedings and documents.

*Press-Enterprise Co. v. Superior Court of Cal. (Press-Enterprise II),* 478 U.S. 1, 10 (1986);

*Press-Enterprise Co. v. Superior Court of Cal. (Press-Enterprise I),* 464 U.S. 501, 507 (1984);

*Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 574 (1980).  Addressing the

presumption of access to judicial proceedings, in *Press-Enterprise II,* the Supreme Court

held that there is a qualified right of public access to judicial proceedings, rooted in the

First Amendment, if there is "a tradition of accessibility" to the nature of the

proceedings involved and if public access "plays a significant positive role in the

functioning of the particular process in question."  *Press-Enterprise II,* 478 U.S. at 8-9.

The "right of access is, in part, founded on the societal interests in public awareness of,

and its understanding and confidence in, the judicial system."  *Application of National*

*Broadcasting Co., Inc.,* 828 F.2d 340, 345 (6th Cir. 1987) (internal quotation marks and

citations omitted.)

Beyond the First Amendment analysis, there exists a common law right of access

to judicial proceedings and documents that does not rise to a constitutional dimension

and is left to the sound discretion of the trial court. *Nixon v. Warner Communications,*

*Inc.,* 435 U.S. 589, 597-99 (1978).  Distinguishing between access to judicial proceedings

and access to judicial documents, the Sixth Circuit has addressed whether there is a

First Amendment right to inspect and copy judicial documents, or only a common law right of access. *Compare United States v. Beckham,* 789 F.2d 401, 406-09, 412-15 (6th Cir. 1986) (holding that media members had no constitutional right of access to tapes), with *Application of National Broadcasting Company, Inc.,* 828 F.2d 340, 345 (6thCir. 1987) (holding that there is a qualified First Amendment right of access to proceedings and documents relating to disqualification of a judge in a criminal case and to conflicts of interest between attorneys in a criminal case).  "Criminal acts . . . provoke public concern, outrage, and hostility."  *Press-Enterprise II,* 478 U.S. at 13.  Further, since there are strong public interests in the assurance that criminal judgments are constitutional, there is a corresponding interest in the public's access to, and understanding of, every stage of the appeals process to which defendants are entitled in order to test the constitutionality of their convictions and sentences.

With respect to the common law right of access, a trial court's discretion is not unfettered and typically involves a fact-intensive and context-specific balancing of the competing interests of those who seek access and those who seek to deny it. *Nixon,*  435 U.S. at 598-99.  The interests to be weighed include (1) the Court's supervisory powers over its own documents; (2) the benefit to the public from the incremental gain in knowledge that would result from access to the materials in question; (3) the degree of danger to the petitioner or other persons mentioned in the materials; (4) the possibility of improper motives on the part of the media; and (5) any special circumstances in the case. *Beckham,* 789 F.2d at 409.  That said, there is a strong presumption in favor of access, *Nixon,* 435 U.S. at 602; *Brown & Williamson Tobacco Corp. v. Federal Trade*

3

*Commission,* 710 F.2d 1165, 1179 (6th Cir. 1983), and any balancing of interests begins with that presumption in favor of access.  In light of the presumption in favor of access, merely articulating rational justifications for denying access will not suffice; rather, a district court must set forth "substantial reasons" for denying access. *Beckham*, 789 F.2d at 413.  Because this burden is a difficult one to overcome, it is common for a Section 2255 movant to be denied the right to seal his petition.  *E.g., Wiant v. United States*, 2005 WL 1651716 (S.D. Ohio 2005).

In this case, Gabrion has failed to demonstrate why the presumption has been overcome and the balance should tip in his favor.  Certainly the five *Beckham* factors cited above warrant public disclosure.  This is especially true of the second factor — the gain in knowledge provided by public access.  The Court will recall that, at the time of his conviction and trial, there was much public interest in the case because of, among other things, the rarity of death penalty cases in Michigan.  By claiming that his case was a miscarriage of justice, Gabrion has provided the public with an opportunity to learn more about this process.  Further, the public always has an interest in determining whether its judicial system is working properly.  This is especially true in a high-profile case such as this one.  Gabrion has not claimed that he will be endangered by disclosure of any materials, and has not claimed that the media has improper motives for wanting access to them.  Therefore, those two *Beckham* factors do not warrant sealing any part of Gabrion's petition.

Gabrion's rationale for concealing his petition from public view is that there are certain psychological and personal records that are "highly relevant but sensitive."

(R.3: Motion to File 2255 Under Restricted Access at 1.)  Despite having had a year to prepare his attack, Gabrion does not specify which materials fall into that category, why they are too sensitive to be disclosed, or whether some items can be filed under restricted access but not others.  Instead, he seeks to restrict access to his petition and all of the accompanying exhibits.  This does not come close to overcoming the presumption in favor of public access to court proceedings.  If granted, his motion will prevent the public from all access to the arguments by which he seeks to set aside his conviction and death sentence.  The First Amendment and the law recited above will not tolerate such an outcome.

For these reasons, the United States requests that Gabrion's motion be denied and that his Petition be placed on the public record.

Respectfully submitted,
PATRICK A. MILES, JR.
United States Attorney


Date:  May 5, 2015        /s/ *Timothy P. VerHey*
TIMOTHY P. VERHEY
Assistant United States Attorney
Western District of Michigan

5