# EXHIBIT 1.7

(ii) Sets forth reasons why suspension of the rules is necessary to handle the institutional emergency;

(iii) Estimates how long suspension of the rules will last; and

(iv) Describes criteria which would allow normal rules application to resume.

(2) *Submitting certification to Director of continuing emergency.* 30 days after the Warden suspends operation of the rules, and every 30 days thereafter, the Warden must submit to the Director written certification that an institutional emergency threatening human life or safety and warranting suspension of the rules continues to exist. If the Warden does not submit this certification to the Director, or if the Director so orders at any time, the suspension of the rules will cease.

[70 FR 29191, May 20, 2005]

### § 501.2  National security cases.

(a) Upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize the Warden to implement special administrative measures that are reasonably necessary to prevent disclosure of classified information upon written certification to the Attorney General by the head of a member agency of the United States intelligence community that the unauthorized disclosure of such information would pose a threat to the national security and that there is a danger that the inmate will disclose such information. These special administrative measures ordinarily may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to prevent the disclosure of classified information. The authority of the Director under this paragraph may not be delegated below the level of Acting Director.

(b) Designated staff shall provide to the affected inmate, as soon as practicable, written notification of the restrictions imposed and the basis for these restrictions. The notice's statement as to the basis may be limited in the interest of prison security or safety or national security. The inmate shall

sign for and receive a copy of the notification.

(c) Initial placement of an inmate in administrative detention and/or any limitation of the inmate's privileges in accordance with paragraph (a) of this section may be imposed for a period of time as determined by the Director, Bureau of Prisons, up to one year. Special restrictions imposed in accordance with paragraph (a) of this section may be extended thereafter by the Director, Bureau of Prisons, in increments not to exceed one year, but only if the Attorney General receives from the head of a member agency of the United States intelligence community an additional written certification that, based on the information available to the agency, there is a danger that the inmate will disclose classified information and that the unauthorized disclosure of such information would pose a threat to the national security. The authority of the Director under this paragraph may not be delegated below the level of Acting Director.

(d) The affected inmate may seek review of any special restrictions imposed in accordance with paragraph (a) of this section through the Administrative Remedy Program, 28 CFR part 542.

(e) Other appropriate officials of the Department of Justice having custody of persons for whom special administrative measures are required may exercise the same authorities under this section as the Director of the Bureau of Prisons and the Warden.

[62 FR 33732, June 20, 1997, as amended at 66 FR 55065, Oct. 31, 2001]

### § 501.3  Prevention of acts of violence and terrorism.

(a) Upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury. These procedures may be implemented upon written notification to the Director, Bureau of Prisons, by the Attorney General or, at the Attorney General's direction, by the head of a federal law enforcement agency, or the head of a member agency of the United States intelligence community, that there is a

**Bureau of Prisons, Justice** §501.3

substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. These special administrative measures ordinarily may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism. The authority of the Director under this paragraph may not be delegated below the level of Acting Director.

(b) Designated staff shall provide to the affected inmate, as soon as practicable, written notification of the restrictions imposed and the basis for these restrictions. The notice's statement as to the basis may be limited in the interest of prison security or safety or to protect against acts of violence or terrorism. The inmate shall sign for and receive a copy of the notification.

(c) Initial placement of an inmate in administrative detention and/or any limitation of the inmate's privileges in accordance with paragraph (a) of this section may be imposed for up to 120 days or, with the approval of the Attorney General, a longer period of time not to exceed one year. Special restrictions imposed in accordance with paragraph (a) of this section may be extended thereafter by the Director, Bureau of Prisons, in increments not to exceed one year, upon receipt by the Director of an additional written notification from the Attorney General, or, at the Attorney General's direction, from the head of a federal law enforcement agency or the head of a member agency of the United States intelligence community, that there continues to be a substantial risk that the inmate's communications or contacts with other persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. The authority of the Director under this

paragraph may not be delegated below the level of Acting Director.

(d) In any case where the Attorney General specifically so orders, based on information from the head of a federal law enforcement or intelligence agency that reasonable suspicion exists to believe that a particular inmate may use oommunications with attorneys or their agents to further or facilitate acts of terrorism, the Director, Bureau of Prisons, shall, in addition to the special administrative measures imposed under paragraph (a) of this section, provide appropriate procedures for the monitoring or review of oommunications between that inmate and attorneys or attorneys' agents who are traditionally covered by the attorney-client privilege, for the purpose of deterring future acts that could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.

(1) The certification by the Attorney General under this paragraph (d) shall be in addition to any findings or determinations relating to the need for the imposition of other special administrative measures as provided in paragraph (a) of this section, but may be incorporated into the same document.

(2) Except in the case of prior court authorization, the Director, Bureau of Prisons, shall provide written notice to the inmate and to the attorneys involved, prior to the initiation of any monitoring or review under this paragraph (d). The notice shall explain:

(i) That, notwithstanding the provisions of part 540 of this chapter or other rules, all oommunications between the inmate and attorneys may be monitored, to the extent determined to be reasonably necessary for the purpose of deterring future acts of violence or terrorism;

(ii) That communications between the inmate and attorneys or their agents are not protected by the attorney-client privilege if they would facilitate criminal acts or a conspiracy to commit criminal acts, or if those communications are not related to the seeking or providing of legal advice.

**Pt. 503**

(3) The Director, Bureau of Prisons, with the approval of the Assistant Attorney General for the Criminal Division, shall employ appropriate procedures to ensure that all attorney-client communications are reviewed for privilege claims and that any properly privileged materials (including, but not limited to, recordings of privileged communications) are not retained during the course of the monitoring. To protect the attorney-client privilege and to ensure that the investigation is not compromised by exposure to privileged material relating to the investigation or to defense strategy, a privilege team shall be designated, consisting of individuals not involved in the underlying investigation. The monitoring shall be conducted pursuant to procedures designed to minimize the intrusion into privileged material or conversations. Except in cases where the person in charge of the privilege team determines that acts of violence or terrorism are imminent, the privilege team shall not disclose any information unless and until such disclosure has been approved by a federal judge.

(e) The affected inmate may seek review of any special restrictions imposed in accordance with paragraph (a) of this section through the Administrative Remedy Program, 28 CFR part 542.

(f) Other appropriate officials of the Department of Justice having custody of persons for whom special administrative measures are required may exercise the same authorities under this section as the Director of the Bureau of Prisons and the Warden.

[62 FR 33732, June 20, 1997, as amended at 66 FR 55065, Oct. 31, 2001]

## PART 503—BUREAU OF PRISONS CENTRAL OFFICE, REGIONAL OFFICES, INSTITUTIONS AND STAFF TRAINING CENTERS

AUTHORITY: 5 U.S.C. 301; 18 U.S.C. 3621, 3622, 3624, 4001, 4003, 4042, 4081, 4082 (Repealed in part as to offenses committed on or after November 1, 1987), 4161–4166 (Repealed in part as to offenses committed on or after November 1, 1987), 5006–5024 (Repealed October 12, 1984, as to offenses committed after that date), 5039; 28 U.S.C. 509, 510.

SOURCE: 70 FR 67091, Nov. 4, 2005, unless otherwise noted.

### § 503.1   Structure of the Bureau of Prisons.

The Bureau of Prisons consists of a Central Office, located at 320 First Street, NW., Washington, DC 20534, a Staff Training Center, and six Regional Offices (Northeast, Mid-Atlantic, Southeast, North Central, South Central, and Western). For further information, please contact the Central Office at the address referenced, or visit *www.bop.gov* for a complete list of contact information for Bureau Regional Offices and facilities.

## PART 505—COST OF INCARCERATION FEE

Sec.
505.1   Purpose and scope.
505.2   Annual determination of average cost of incarceration.
505.3   Inmates exempted from fee assessment.
505.4   Calculation of assessment by unit staff.
505.5   Waiver of fee by Warden.
505.6   Procedures for payment.
505.7   Procedures for final disposition.

AUTHORITY: 5 U.S.C. 301; 18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082 (Repealed in part as to offenses committed on or after November 1, 1987), 5006–5024 (Repealed October 12, 1984 as to offenses committed after that date), 5039; 31 U.S.C. 3717; Pub. L. 102–395, 106 Stat. 1842 (18 U.S.C. 4001 note); 28 CFR 0.95–0.99.

SOURCE: 64 FR 43881, Aug. 11, 1999, unless otherwise noted.

### § 505.1   Purpose and scope.

This part establishes procedures for the assessment and collection of a fee to cover the cost of incarceration. The Director of the Bureau of Prisons has been delegated the authority of the Attorney General (see 28 CFR 0.96c) to assess and collect a fee imposed by the Bureau in the event the court neither imposes nor waives a fine pursuant to the Sentencing Guidelines 5E1.2(d). For purposes of this part, revocation of parole or supervised release is to be treated as a separate period of incarceration for which a fee may be imposed.