# EXHIBIT 1.9



1 of 7 DOCUMENTS

UNITED STATES OF AMERICA, Plaintiff-Respondent, v. DARRYL LAMONT JOHNSON, Defendant-Movant.

No. 02 C 6998

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2010 U.S. Dist. LEXIS 133727*

December 13, 2010, Decided
December 13, 2010, Filed

**PRIOR HISTORY:** *United States v. Johnson, 2009 U.S. Dist. LEXIS 42934 (N.D. Ill., May 15, 2009)*

**COUNSEL:** [*1] For United States of America, Plaintiff: David E. Bindi, United States Attorney's Office (NDIL), Chicago, IL.

For Darryl Lamont Johnson, Defendant: Terence H. Campbell, LEAD ATTORNEY, Cotsirilos, Tighe & Streicker, Chicago, IL; Lorinda Meier Youngcourt, Lorinda Meier Youngcourt, Huron, IN.

**JUDGES:** The Honorable William J. Hibbler, United States District Judge.

**OPINION BY:** William J. Hibbler

**OPINION**

**MEMORANDUM OPINION AND ORDER**

In 1997, a jury convicted Darryl Lamont Johnson for ordering the murder of a person assisting in a federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise, among 41 other counts. The jury later concluded that death was the appropriate sentence. The

Seventh Circuit denied Johnson's appeal and the Supreme Court denied his petition for a writ of *certiorari. United States v. Johnson, 223 F.3d 665 (7th Cir. 2000); Johnson v. United States, 534 U.S. 829, 122 S. Ct. 71, 151 L.Ed.2d 37 (2001).*

Johnson then sought to set aside his sentence pursuant to *28 U.S.C. § 2255.* In his petition, Johnson raised a number of claims, including a claim of ineffective assistance of counsel, a claim that the Government withheld exculpatory evidence [*2] in violation of *Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963),* and a claim that his sentence was based on materially incomplete, false and/or inaccurate information in violation of the *Eighth Amendment, see Johnson v. Mississippi, 486 U.S. 578, 584-86, 108 S. Ct. 1981, 1986-87, 100 L.Ed.2d 575 (1988).* The Court denied Johnson's *§ 2255* motion, holding that he procedurally defaulted all three of the aforementioned claims because he failed to raise those claims in his direct appeal.

A few years after the initial ruling on Johnson's *§ 2255* motion, the Supreme Court announced its decision in *Massaro v. United States. 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).* In Massaro, the Supreme Court held that a petitioner may bring an ineffective assistance of counsel claim in a collateral proceeding

whether or not the petitioner could have raised the claim on direct appeal. *Id.* Consequently, the Court vacated the portion of its ruling concerning Johnson's ineffective assistance of counsel claim.[1] Following discovery, the parties provided the Court with supplemental briefing on the merits of that claim. In addition, Johnson moves the Court to once again address [*3] his *Brady* and *Johnson* claims based on what he believes to be changes in relevant law and facts. For the following reasons, the Court grants Johnson's *§ 2255* motion based on his ineffective assistance of counsel claim. The Court therefore vacates his death sentence and awards him a new sentencing hearing. In addition, Johnson's motion for consideration of his other claims is therefore moot.

> 1 Another judge in this district initially ruled on Johnson's *§ 2255* motion and the motion to reconsider pursuant to *Massaro*. The executive committee has since reassigned the case.

## I. Background

Johnson's ineffective assistance claim centers on trial counsel's efforts to convince the jury to impose a sentence of life imprisonment rather than one of death. At Johnson's sentencing, counsel presented evidence about the custodial options for housing him. In particular, Johnson presented evidence to suggest that if he were placed permanently in the control unit in ADX-Florence, where inmates are confined to their cells 23 hours per day and not allowed contact with other inmates, he would have no opportunity to carry out a continuing criminal enterprise and his dangerousness to society would be mitigated.

In [*4] rebuttal, the Government called an expert, a Bureau of Prisons (BOP) warden, who had formerly served as Assistant Warden at ADX-Florence. That witness testified generally about what BOP placement was likely in Johnson's case. He testified that typically gang leaders like Johnson go to the general prison population, rather than some more restrictive setting. He also testified that even prisoners in strictly controlled environments had managed to commit crimes, including ordering the killing of other inmates. He stated that the BOP could not house prisoners in such strict conditions indefinitely. Finally, he claimed that prisoners cannot be directly assigned to the ADX-Florence control unit based solely on the offenses in the community. Instead, he said, the BOP could temporarily impose restrictions on an inmate, such as limited communication and association, if

the inmate committed some infraction while in prison.

Not even one member of the jury accepted Johnson's proposed finding that he would not be "a serious and continuing danger to the society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and [*5] monitor his behavior." The jury did find a number of aggravating factors, both statutory and non-statutory. In particular, the jury found that Johnson caused the killing after substantial planning and premeditation in the course of a continuing criminal enterprise that involved distribution of drugs to persons under the age of 21. It also found that he ordered the murder to obstruct justice by preventing the victim from testifying and caused harm to the victim's family. After its somewhat lengthy deliberations, the jury sentenced Johnson to death.

In Johnson's *§ 2255* motion, he argues that he was prejudiced by his trial counsel's failure to investigate the law and facts necessary to subject the Government's case on future dangerousness to meaningful adversarial testing. In short, Johnson suggests that trial counsel was ineffective in allowing the Government expert's testimony to go unrebutted.

Johnson argues that, contrary to the Government expert's testimony, there are laws which allow for the application of strict conditions of confinement for extended periods of time absent any infraction within prison in order to alleviate the risk a particular inmate poses to society. First, the [*6] BOP can control the conditions of confinement by employing Special Administrative Measures ("SAMs") authorized by *28 C.F.R. § 501.3(a)*. Second, courts can order restrictions on communication and association as part of a sentence pursuant to *18 U.S.C. § 3582(d)*. In fact, Johnson has presented evidence of a number of examples of such inmates in addition to those in his original motion.

## II. Standard of Review

In order to succeed on his claim of ineffective assistance of counsel, a *§ 2255* movant must meet both prongs of a test set forth in *Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984)*. First, he must show that his counsel's performance was deficient. *Id. at 687, 104 S. Ct. at 2064*. In this case, the Government concedes the point, agreeing with Johnson that his trial counsel did not effectively impeach the testimony of the Government's expert regarding

Johnson's future dangerousness. Instead, the Government disputes only whether Johnson can satisfy the second prong of the *Strickland* test. Thus, Johnson must show that his counsel's deficient performance prejudiced his defense. *Id.* More specifically, he must show "that there is a reasonable probability that, [*7] but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id. at 694, 104 S. Ct. at 2068.*

A "reasonable probability," for purposes of this standard, is "a probability sufficient to undermine confidence in the outcome" of the penalty phase of Johnson's trial. *Id.* The standard is lower than the more familiar "preponderance of the evidence" standard because an ineffective assistance claim "asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker." *Id.* However, Johnson must show more than that his counsel's errors "had some conceivable effect on the outcome of the proceeding." *Id. at 693, 104 S. Ct. at 2067.*

### III. Analysis

In addition to conceding that Johnson's counsel was deficient, the Government conceded at the *certiorari* stage of Johnson's direct appeal that the testimony of the Government's expert was incomplete because he failed to mention *28 C.F.R. § 501.3* and *18 U.S.C. § 3582(d).* The Government admitted that the testimony may have left the jury with the mistaken impression that neither the BOP nor the Court had the authority to impose certain restrictions on [*8] an inmate immediately upon sentencing. Nonetheless, the Government argues that Johnson cannot show that defense counsel's failure to impeach the witness on those matters created a reasonable probability that the jury would not have sentenced Johnson to death.

For a number of reasons, the Court rejects the Government's argument. First, the Court finds that the probability that the errors affected Johnson's sentence is higher in this case than in some because the errors were relevant to the issue of future dangerousness. The Court recognizes the importance of the fact that the jury in Johnson's case found a number of aggravating factors that did not relate to Johnson's future dangerousness. But the Court finds that future dangerousness, and the Government's ability to protect against it, is an especially important factor in death penalty cases generally, as well as in this case particularly.

On this point, the Government's closing argument from the penalty phase of Johnson's trial is telling. The Government devoted a significant portion of its arguments in closing and rebuttal to the issue of future dangerousness and the likelihood that Johnson could not be controlled in prison - perhaps [*9] more than to any other aggravating or mitigating factor. The Government's language on these points was strong and clear. The Government stated that "as long as [Johnson] has the ability to convey his orders to his followers, either on the street or in prison with him, nobody is safe; no witness, no witness's family, anybody who stands in his way, they are not safe. It doesn't matter where he is locked up." (Tr. 2593.) Moreover, the Government reiterated the admittedly incomplete and misleading testimony of its expert by stating, among other things, that Johnson would not be going to the control unit at ADX-Florence because federal regulations would not allow it. (Tr. 2645.) The Government's focus on these points suggests that it recognized the potential importance of this factor on the jury's decision in this case.

This conclusion also finds support in the empirical research on the subject. A number of studies suggest that future dangerousness is one of the most issues, if not the most significant, for juries deciding whether or not to sentence a defendant to death. *See, e.g.*, John H. Blume, et al., *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 Cornell L. Rev. 397, 404 (2001); [*10] Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559-60 (1998); Sally Costanzo & Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Making Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("[n]early all jurors [surveyed]...offered the observation that the penalty decision hinged on the issue of whether the defendant would pose a continuing threat to society").

Johnson also points to an analogous case that illustrates the importance that this factor can have on a jury. In that case, *United States v. Jones*, No. CR-96-458-WMN (D. Md.), a jury convicted Jones of ordering the murders of federal witnesses, including one while he was incarcerated in a federal prison. The *Jones* jury found a number of the same aggravating factors as the jury did in this case, including that he was a future danger and a "continuing and serious threat to society." However, seven members of the jury also found that:

2010 U.S. Dist. LEXIS 133727, *10

Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the Federal Bureau of Prisons is empowered to classify a prisoner serving a life sentence [*11] without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society.

The jury did not sentence Jones to death. Johnson notes that the jury in the *Jones* case heard testimony regarding the restrictive conditions that could be imposed on Jones and that had been imposed in another case.

The Government is right to note that the fact of every case and make-up of every jury varies, and that it would be wrong to assume that the jury would do the same in Johnson's case as the jury did in Jones's case if Johnson had effective assistance of counsel. But, the Government is notably silent in its brief on how the two cases are distinguishable. And the similarities between the facts of these two cases which have different results undermines the reliability of the result in Johnson's case further.

As discussed above, Johnson faces a relatively low burden in this case. Given that "it only takes one juror to

nix a death sentence," *United States v. Johnson, 223 F.3d 665, 670 (7th Cir. 2000)*, he only needs to show a reasonable probability that one juror would [*12] have changed his or her mind during the course of the lengthy deliberations in this case. Johnson has shown that his future dangerousness, the factor admittedly affected by his counsel's errors, was likely an important factor in the jurors' minds, weighing heavily on the scale for measuring aggravating and mitigating factors. Given this showing, the Court finds that there is a reasonable probability that if Johnson had effective assistance of counsel, the jury would not have sentenced him to death. He has sufficiently undermined the reliability of the penalty phase of his trial. Thus, the Court GRANTS Johnson's § 2255 motion, VACATES his death sentence, and ORDERS that he be given a new hearing before a jury to determine his sentence.

IT IS SO ORDERED.

12/13/10

Dated

/s/ William J. Hibbler

Hon. William J. Hibbler

United States District Court