# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARVIN CHARLES GABRION, II,                    1:15-CV-00447

     Movant,                                              (Criminal Case 1:99-CR-76)

v                                              Honorable Robert Holmes Bell
                                               U.S. District Judge
UNITED STATES OF AMERICA,

     Respondent.

---

**MARVIN GABRION'S BRIEF IN SUPPORT OF MOTION TO PERMIT DISCOVERY**
**AND TO STAY AMENDMENT AND BRIEFING PENDING DISCOVERY**

---

Marvin Gabrion has moved pursuant to 28 U.S.C. § 2255 for relief from the conviction and

sentence of death imposed by this Court.  The government has responded in opposition to the

motion.  Pursuant to F.R.Civ.P.15(a)(1)(B), Mr. Gabrion is authorized to amend his motion within

twenty-one (21) days as a matter of right.  He now comes before this Court, by counsel, and requests

permission to engage in discovery before amending his motion.  Mr. Gabrion further requests that

the Court stay the time period for filing an amended petition and further briefing until such time as

discovery may be had.  In this memorandum, Mr. Gabrion will demonstrate why the proposed

procedure is reasonable, is necessary to provide competent representation in these capital § 2255

proceedings, and is in line with similar requests made in other capital § 2255 cases.  Mr. Gabrion

will file with this motion two separate motions seeking specific discovery by identifying proposed

deponents and describing the information he seeks in the form of document requests.

The filing of the § 2255 motion is only the first step in a procedure that tests the reliability

and lawfulness of the litigation that resulted in Mr. Gabrion's death sentence.  It is merely the

document that puts all parties and the Court on notice of the cognizable claims.  There is a

difference between pleading and proving claims, as the government's response makes clear.  In short, discovery and other available procedures and investigation are necessary to provide Mr. Gabrion one full opportunity to prove his case to the satisfaction of this Court and future reviewing Courts.

Section 2255 proceedings are unique, and not comparable to other appellate or post-conviction remedies, capital or noncapital.  Thus, procedures developed specific to other remedies are not transferable to capital § 2255 cases.  2255 proceedings allow a comprehensive reinvestigation of both the guilt and penalty phases and are unique, as the only procedure that tests the reliability of the conviction and death sentence without record limitations.  Discovery plays a vital role in the required reinvestigation.  Finally, the procedure suggested in this motion will permit the efficient litigation of this capital matter in a fiscally responsible manner.

### INTRODUCTION

The "writ of habeas corpus plays a vital role in protecting constitutional rights." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal citation omitted).  Although strictly speaking a § 2255 motion is not an application for a writ of habeas corpus, it is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974).

Congress did not intend to make substantive changes to the writ of habeas corpus when it enacted 28 U.S.C. § 2255. *United States v. Hayman*, 342 U.S. 205 (1954).  The intent of the codification was to ameliorate certain problems in the technical handling of federal prisoner habeas corpus applications.  That is, § 2255 was designed as a case management device to divert most, but not all, federal prisoner petitions away from the district of incarceration and into the district in which the federal prisoner originally was tried and sentenced: "Nowhere in the history of § 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions.  On the

2

contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum". *Id.*, 342 U.S. at 219.

Despite a rich history of common law supporting the traditional habeas corpus remedy, capital § 2255 litigation is a relatively new field of litigation. The novelty of this area of the law has resulted in attempts to analogize it to other, more familiar types of post-trial and collateral litigation, such as direct appeals, non-capital § 2255's, and capital § 2254's. However, as is explained in more detail below, such analogies are inapt, as there are critical differences between these other proceedings and capital § 2255 litigation.

### 1.    Capital 2255's are significantly different than other appellate remedies.

#### a.    Direct appeals

Capital § 2255s are unlike federal direct appeals. In direct appeal cases, the universe of facts upon which a litigant can rely in order to raise a claim for relief is restricted to the trial record. Appellate counsel need not – and, indeed, in most instances, *cannot* – go beyond the transcript itself and the associated trial pleadings in order to raise cognizable legal claims. For these reasons, the tasks involved in preparing a direct appeal are primarily focused on reviewing the trial record and conducting legal research to identify potential issues based on the trial court's resolution of various motions and objections during the course of the pre-trial and trial litigation.

By contrast, a capital § 2255 case cannot be litigated competently in the same way.  Certainly, a thorough knowledge of the trial record, as well as extensive legal research, is a necessary part of habeas litigation.  But almost none of the cognizable capital habeas claims can be identified or developed consistently with the requirements of Rule 2 of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("§ 2255 RULES") absent investigation

3

into facts outside the existing record. See § 2255 Rules, Rule 2(b)(2) (requiring that the § 2255 motion "state the facts supporting each ground [for relief]").

Unlike a prisoner proceeding on direct appeal, a capital § 2255 litigant cannot establish a claim supporting relief absent the development of new facts outside the trial record. For this reason, ineffective assistance of counsel claims are more appropriately brought in § 2255 proceedings rather than on direct appeal because such claims usually depend on factual development beyond the existing record. *Massaro v. United States*, 538 U.S. 500, 504-505 (2003).  Moreover, a § 2255 movant generally cannot relitigate questions which have already been raised and considered on direct appeal, as those adjudicated claims are considered to be the "law of the case." *See, e.g., United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (*per curiam*); *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).  Indeed, if a capital § 2255 proceeding simply relied on the facts and arguments already litigated at trial and appeal, it would serve no function. The very purpose of habeas litigation is to develop facts and claims **outside the existing record** that entitle the movant to relief.

### b.      Non-capital §2255's.

Capital § 2255 litigation also differs significantly from non-capital § 2255 litigation. In capital cases, the prospect of the death penalty affects every aspect of trial, from indictment to pretrial motions to jury selection to instructions and finally, of course, to the penalty phase of the proceedings. Counsel, therefore, must examine every aspect of the trial against the backdrop of complex capital jurisprudence.  Additionally, capital § 2255 cases necessarily require identification and investigation of claims related to the penalty phase of the underlying criminal trial proceeding, a feature unique to death penalty cases.

4

Conversely, in a typical non-capital § 2255 case, issues regarding trial counsel's ineffectiveness with respect to sentencing usually concern counsel's alleged errors in litigating various aspects of the United States Sentencing Guidelines. Such claims are almost always resolvable on the basis of the extant record alone – that is, they rely on *legal* argument regarding the applicability or availability of various Guidelines factors to the defendant's case based on the facts determined at trial or as part of the defendant's guilty plea.

By contrast, the effectiveness of trial counsel's performance in a capital sentencing proceeding cannot be assessed based on the extant trial record, as such claims almost always involve errors of omission, such as an alleged failure to investigate, develop and present particular mitigating information. Moreover, non-capital § 2255 cases frequently follow guilty pleas. By contrast, nearly every capital § 2255 case was preceded by a full trial on the issue of guilt, so the extant record will be more voluminous, and the scope of potential claims greater, than the typical non-capital § 2255 case.

c.     <u>Capital § 2254 litigation.</u>

Finally, capital § 2255 litigation also differs from capital § 2254 litigation in critical respects. In a capital § 2254 proceeding, the death-sentenced individual is of course challenging the conviction and sentence imposed in a state court. By the time the petitioner has entered federal court, the first and main opportunity to develop extra-record facts in support of any claims of error – i.e., in the state habeas court – has already taken place. As a practical matter, that means that an indigent § 2254 petitioner has already likely received some funding from the state courts to pursue a post-conviction investigation, and has also had an opportunity to present new facts developed in the course of that investigation to a state habeas court.

If the § 2254 petitioner does not succeed in state court, she has a chance to pursue her federal claims for relief in federal court, sometimes in the context of an evidentiary hearing. See 28

5

U.S.C. § 2254(e)(2) (setting forth conditions for evidentiary hearing in § 2254 cases). By contrast, a §

2255 litigant has only one forum, and one opportunity, to develop and present extra-record facts in

support of the § 2255 motion – the federal district court. In other words, the § 2255 district court is

the first and last forum where a capital § 2255 movant can develop facts necessary to establish a

claim for relief.

Additionally, the role of federal district courts is clearly much more constrained in § 2254

cases than in § 2255 cases. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"),

codified at 28 U.S.C § 2254, federal district courts are generally charged in the first instance with

reviewing state court factual findings, presumed to be correct, rather than with acting as a forum for

the presentation and development of new facts. *See* 28 U.S.C. § 2254(e). Indeed, a federal court

usually lacks authority to consider a § 2254 claim that was not previously raised and exhausted in the

state court, *Id.* at § 2254(b)(1)(A), and with respect to those claims that were previously raised and

adjudicated on the merits, the scope of the federal court's review is circumscribed.  *Id.* at §

2254(d)(1) & (2) (federal court cannot grant writ on previously-adjudicated claim unless state court

decision was "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," or was "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding").

In contrast to the limited scope of review in § 2254, the federal district court has much more

latitude in § 2255 litigation, both as a forum for fact-development, and with respect to the

adjudication of the claims on the merits.[1] Consequently, the necessity for a thorough post-conviction

---

[1] Additionally, because motions under § 2255 can be based on violations of federal statutory criminal law and criminal procedure codes as well as the federal Constitution, they are accordingly subject to a wider range of potentially available federal legal claims than are state prisoner actions under § 2254. *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution *or laws of the United States* . . . may move the court which imposed the

investigation in a capital § 2255 proceeding is all the more important, because the only practical limitation on the claims that can be pursued are dictated by the completeness and quality of the post-conviction investigation.

### 2. Comprehensive reinvestigations of both the guilt and penalty phases are required in capital § 2255 proceedings.

The importance of conducting a comprehensive reinvestigation of the case as part of capital post-conviction litigation cannot be overstated. Nearly all of the cognizable claims that can be brought in a capital § 2255 proceeding will not be apparent on the face of the trial record, and can be established only by virtue of the discovery of extra-record facts. The demands involved in such a post-conviction investigation have been aptly summarized by the ABA guidelines for capital representation:

> Ultimately, winning collateral relief in capital cases will require changing the picture that has previously been presented. . . . [C]ollateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation . . . . [T]he trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case. That may be because of information concealed by the state, because of witnesses who did not appear at trial or who testified falsely, because the trial attorney did not conduct an adequate investigation in the first instance, because new developments show the inadequacies of prior forensic evidence, because of juror misconduct, or for a variety of other reasons.
>
> …
>
> Reinvestigating the case means examining the facts underlying the conviction and sentence, as well as such items as trial counsel's performance, judicial bias or prosecutorial misconduct. Reinvestigating the client means assembling a more-thorough biography of the client than was known at the time of trial, not only to discover mitigation that was not presented previously, but also to identify mental-health claims which potentially reach beyond sentencing issues to fundamental questions of competency and mental-state defenses.

---

sentence to vacate, set aside or correct the sentence") (emphasis added). Thus, a § 2255 investigation must be broader and more far-ranging because the potential cognizable claims can be statutory in nature, rather than exclusively constitutional.

American Bar Association, GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF

DEFENSE COUNSEL IN DEATH PENALTY CASES (February 2003), Commentary to Guideline 10.15.1.

*See also* ABA Guideline 10.7 ("Counsel at every stage have an obligation to conduct thorough and

independent investigations relating to the issues of both guilt and penalty"); *Padilla v. Kentucky*, 559

U.S. 356, 366-67 (2010) (noting that the Supreme Court has "long . . . recognized that prevailing

norms of practice as reflected in American Bar Association standards and the like . . . are guides to

determining what is reasonable [attorney performance]." (internal quotation marks and citations

omitted)).

Because the § 2255 proceeding is the movant's only opportunity to investigate and develop

challenges to his conviction and/or sentence, a broad-based exploration is essential. For example,

post-conviction counsel cannot merely assume that trial counsel rendered effective assistance just

because they are experienced in capital litigation or well regarded in the legal community.

Experience has shown, even well-trained trial counsel at the federal level make critical errors

which subsequently warrant a new trial or sentencing hearing. Such errors, however, are rarely, if

ever, apparent from the trial record. Rather, they are uncovered only by going beyond the record

and reinvestigating a case which, on the surface, may appear to have been properly litigated at trial.

Although the federal capital bar is often highly qualified when it comes to criminal defense,

death sentences returned under the federal system are certainly not immune from error. Section

2255 counsel has a duty to the client and the court to determine whether any such unseen error may

have tainted the capital conviction or sentence of death. *See, e.g., Johnson v. United States*, 860 F. Supp.

2d 663 (N.D. Iowa 2012);  *United States v. Stitt*, 369 F. Supp. 2d 679 (E.D. Va. 2005) (federal trial

attorney labored under actual conflict of interest necessitating new penalty phase trial due to

ineffective assistance of counsel).

In *Johnson*, *supra*, the federal District Court Judge has written about how carefully he selected the trial lawyers for Johnson and a codefendant, believing at the time that he had assembled two "dream teams."  He wrote, "[n]ever in my wildest imagination could I have foreseen that one of these 'dream teams' would turn into my worst judicial nightmare years later – a nightmare that unfolded in a § 2255 ineffective assistance of counsel proceeding spanning most of 2011 – that included over eighteen days of testimony, four phases of evidence, nearly sixty witnesses, and thousands of pages of exhibits."  Bennett, Mark, *Sudden Death: A Federal Trial Judge's Reflections On the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 42 Hofstra L.R. 391 (2013).  At the conclusion of that hearing, Judge Bennett issued a 190-page Opinion detailing the "shockingly numerous and disturbing constitutional deficiencies in the performance of Johnson's alarmingly dysfunctional trial team."  *Johnson*, *supra* at 680.  Johnson's death sentences were set aside.

The same is true of claims of prosecutorial misconduct such as those brought pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Napue v. Illinois*, 360 U.S. 264 (1958), and their progeny. Cognizable claims of prosecutorial misconduct at the federal level require a searching and time-intensive investigation to uncover supporting facts that are otherwise not contained in the existing trial record. *United States v. Hammer*, 404 F. Supp. 2d 676 (M.D. Pa. 2005) (capital § 2255 movant entitled to retrial of penalty phase due to government's failure to disclose relevant and material *Brady* information). Indeed, by definition such legal claims involve information that was suppressed, and therefore was not provided to the movant at the time of trial. *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Thus, it is only through extra-record investigation that post-conviction counsel can even identify the existence of *Brady* information and develop sufficient facts to be able to raise and litigate such a claim in the post-conviction proceedings. *See Banks v. Dretke*, 540 U.S. 668, 684-86 (2004)

(recounting extra-record facts developed in post-conviction proceedings demonstrating that the testimony of two key prosecution witnesses was coached and obtained in exchange for deals made with the prosecutor).

**3.**     **The trial judge's familiarity with the trial proceedings does not reduce § 2255 counsel's obligations to fully investigate potential claims.**

Although § 2255 motions are ordinarily heard by the same judge who presided over the original trial, the necessity for such extra-record fact development is no less true simply because the presiding judge already has some familiarity with the case. This is because, as noted above, most claims raised in capital § 2255 proceedings typically rely on facts that occurred outside the courtroom, and therefore were never presented for the judge's consideration. For example, claims regarding trial counsel's failure to discover and present relevant mitigating evidence can only be established through extra-record fact development; by definition, the extant record will be silent as to the facts establishing such errors of *omission*, and the presiding judge will never have heard this evidence because counsel never presented it at the original trial.

Indeed, even where some mitigation was presented by trial counsel in the original penalty phase proceedings, § 2255 counsel may, through adequate investigation, demonstrate that there were important areas of mitigation that trial counsel unreasonably failed to identify and present—areas of which the presiding judge would otherwise never be aware of. As the United States Supreme Court noted:

> We have never limited the prejudice inquiry under *Strickland* to cases in which there was only "little or no mitigation evidence" presented. . . . [W]e also have found deficiency *and* prejudice in other cases in which counsel presented what could be described as a superficially reasonable mitigation theory during the penalty phase. *E.g.*, *Williams*, *supra*, at 398 (remorse and cooperation with police); *Rompilla* v. *Beard*, 545 U. S. 374, 378 (2005) (residual doubt). We did so most recently in *Porter* v. *McCollum*, 558 U. S. [30, 34] (2009) *(per curiam)*, where counsel at trial had attempted to blame his client's bad acts on his drunkenness, and had failed to discover significant mitigation evidence relating to his client's heroic military service and

10

substantial mental health difficulties that came to light only during post conviction relief.

*Sears v. Upton,* 561 U.S. 945, 954 (2010). *See also Walbey v. Dretke*, 309 Fed. Appx. 795 (5th Cir. 2009) (unpublished) (granting relief due to ineffective assistance at penalty phase, despite fact that trial counsel presented mitigation evidence and expert testimony, because picture presented was "substantially incomplete"); *Williams v. Allen,* 542 F.3d 1326, 1339-40 (11th Cir. 2008) (finding counsel ineffective despite presentation of mitigation at trial because picture presented was "incomplete" and "misleading"); *Gray v. Branker*, 529 F.3d 220, 235-38 (4th Cir. 2008) (finding counsel ineffective where trial punishment presentation was "scattered," did not "give[] the full picture," and failed to present "a cohesive case").

Moreover, it is only pursuant to a post-conviction investigation that such information will ever come to the presiding judge's attention. *See In re Webster*, 605 F.3d 256, 259 (5th Cir. 2010) (Weiner, J., concurring) (noting that post-conviction investigation uncovered evidence, years after trial, which, if it "were ever presented to a judge or jury for consideration on the merits, it is virtually guaranteed that [the movant] would be found to be mentally retarded"; the records "refute[d] much of the evidence introduced by the government at the penalty phase of Webster's trial," including the government's argument that Webster had never been placed in special education classes and that he was malingering and exaggerating his symptoms to avoid the death penalty). Absent the development of those extra-record facts, the presiding judge will simply have no information available with which to intelligently determine whether there is a reasonable probability that the outcome of the trial proceeding would have been different, but for the omission of these additional facts.

In short, capital § 2255 counsel cannot simply rely on a review of the trial record to spot potentially meritorious claims. Cognizable post-conviction claims are rarely, if ever, identifiable on

11

the face of the transcribed trial record, and can only be developed by means of a reinvestigation of both phases of the capital trial. That is, a post-conviction reinvestigation necessarily entails both a reinvestigation of the facts of the offense as well as the mitigating evidence and penalty-phase issues. Indeed, absent such a reinvestigation, post-conviction counsel will fail to represent a capital § 2255 movant pursuant to the requirements of the statute, related rules, and relevant professional guidelines; as such, fact development is the only means by which counsel can determine potentially meritorious claims that necessarily rely by their nature on extra-record evidence.  *See Porter v. McCollum*, 558 U.S. 30, 40 (2009) (holding that trial counsel had an "obligation to conduct a thorough investigation of the defendant's background," and ruling that the "investigation conducted by [trial] counsel clearly did not satisfy those norms" because trial counsel "failed to uncover and present any evidence of [the client's] mental health or mental impairment, his family background, or his military service," all of which was discovered as part of the post-conviction investigations and presented at an evidentiary hearing).

> 4.      **An integral part of the requisite reinvestigation requires discovery.**

A habeas petitioner is entitled to discovery if he can establish good cause for his request. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).  A petitioner establishes "good cause" whenever "specific allegations before the court show reason to believe that the petition may, if the facts are fully developed, be able to demonstrate that he is . . .  entitled to relief."  *Bracy*, 520 U.S. 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969); *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001).  See also, Rules Governing § 2255 Proceedings for the United States District Courts, Rule 6(a) ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law").

By authorizing discovery for good cause, the rule provides a vehicle for the Supreme Court's directive that a federal habeas petitioner is "entitled to careful consideration and plenary processing of [his claims], including full opportunity for presentation of the relevant facts." *Harris v. Nelson*, *supra*; see also *Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) (same).

The sentence imposed upon Mr. Gabrion is the most serious our society permits.  It requires a corresponding heightened degree of reliability in the procedure that rendered it.  Investigation to-date has revealed serious and disturbing facts which call into question the reliability of the verdict and sentence.  Simultaneous with this filing, Mr. Gabrion has filed motions for discovery which detail the material he seeks and the justification for the request.  In light of the finality of this sentence, and the fact that this is his only opportunity to develop these claims, discovery should be permitted.

> **5.** **Staying the deadline for filing the Amended Petition and further briefing pending discovery will establish an orderly process for the full and fair resolution of the claims presented.**

Habeas petitioners can file an amended petition as of right within 21 days of the government's answer.  Fed. R. Civ. P. 15 (a)(1)(B).  Mr. Gabrion seeks leave of court to file his amendment and further briefing after the discovery process concludes.  The suggested procedure is consistent with procedures in other capital habeas cases.  (See: e.g., *United States v. Hammer*, 404 Supp. 2d 676 (M.D. Pa 2005); *Johnson v. United States*, 860 F.Supp.2d 636 (N.D. Iowa 2012); *United States v. Sampson*, 820 F.Supp.2d 202 (D. Mass. 2011).)  It is also a better, more conservative, use of resources.  It is highly likely discovery will reveal additional facts to support Mr. Gabrion's claims.  It is fiscally prudent to adopt a procedure that requires only one amendment and only one round of briefing, rather than piecemeal, possibly redundant, briefing.

13

This Court's duty to scrutinize the record for error is never higher than in a capital 2255 proceeding. *Beck v. Alabama*, 447 U.S. 625, 637 (1980).   The procedure suggested here is designed to facilitate this procedure by allowing Mr. Gabrion to present a full record for the Court's consideration.

## CONCLUSION

Mr. Gabrion moves this Court to establish the following timelines:  (1) a time period for discovery consisting of at least six (6) months; (2) a deadline of twenty-one (21) days after the close of discovery in which to allow Mr. Gabrion to amend his 2255 motion as a matter of right; and (3) a briefing schedule following the government's response to Mr. Gabrion's amended motion.

**Dated:  January 29, 2016**

By:  /s/ *Monica Foster*
     Monica Foster
     Attorney for Movant
Business Address:
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 2150
Indianapolis, Indiana 46204
(317) 383-3520

By:  /s/ *Scott Graham*
     Scott Graham
     Attorney for Movant
Business Address:
SCOTT GRAHAM PLLC
1911 West Centre Avenue, Suite C
Portage, Michigan 49024
(269) 327.0585

**Respectfully submitted,**

By:  /s/ *Joseph M. Cleary*
     Joseph M. Cleary
     Attorney for Movant
Business Address:
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 2150
Indianapolis, Indiana 46204
(317) 383-3520