**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARVIN CHARLES GABRION, II,                          1:15-CV-00447

     Movant,                                            (Criminal Case 1:99-CR-76)

v                                                    Honorable Robert Holmes Bell
                                                     U.S. District Judge
UNITED STATES OF AMERICA,

     Respondent.

---

**BRIEF IN SUPPORT OF MARVIN GABRION'S MOTION FOR LEAVE TO
CONDUCT DISCOVERY IN THE FORM OF INTERROGATORIES, REQUESTS
FOR PRODUCTION OF DOCUMENTS AND REQUESTS TO ADMIT**

---

Mr. Gabrion has moved for relief under 28 U.S.C. § 2255 and the government has responded. Mr. Gabrion has separately moved for discovery in the form of depositions on oral examination. In that motion, he sets forth the legal standard for allowing discovery and adopts that argument here. In this motion, Mr. Gabrion seeks permission to conduct other forms of discovery by directing interrogatories, requests for production and requests to admit to appropriate parties. Mr. Gabrion acknowledges the obligation to direct Section 2255 discovery only to parties who he believes in good faith will have copies of the items requested. All requests will be directed based on that standard. Mr. Gabrion now requests leave to conduct additional discovery. The discovery is necessary in order to allow Mr. Gabrion to fully present his position to the Court and to allow the Court to fairly determine whether relief is appropriate. Mr. Gabrion describes below the discovery that is required and the reasons why good cause exists for the discovery. Mr. Gabrion understands that some of the discovery might be subject to protective orders or restricted access.

**DISCOVERY REQUEST**

1.      Mr. Gabrion requests discovery of all information, including documents and things, provided by the government or any other party to Dr. David Griesemer, relevant to his opinion in this case.  The trial record shows that Dr. Griesemer was retained by the government and testified at the penalty phase of Mr. Gabrion's trial.  On March 12, 2002, Dr. Griesemer provided a letter to AUSA Joan E. Meyer regarding his findings about Mr. Gabrion.  He began the letter by stating "At your request, I have reviewed an exhaustive body of information concerning [Movant].  This includes medical records, correspondence, and transcribed interviews."  Throughout his six page letter, Dr. Griesemer refers to things he has reviewed and references page citations that go as high as 2635.  It appears that trial counsel was not provided with whatever corresponding items were given to Dr. Griesemer and upon which he based his testimony.  2255 counsel has reviewed the items cited by Dr. Griesemer in his correspondence and it is clear that the page citations he provided to AUSA Meyer do not correspond to the Bates stamped discovery provided to the trial attorneys by the government.  It thus appears that Dr. Griesemer was provided information and documents by the government or some other source(s) upon which he based his opinion. This is information that should have been provided to trial counsel so that counsel could have effectively cross-examined Dr. Griesemer as to the foundation for his opinions.  Good cause exists for the production of this file.

2.      Mr. Gabrion seeks production of the following documents:  (1) Curriculum Vitaes for Sue Adams and Chris Whitcomb, the two examiners with the FBI's Law Enforcement Communications Unit who conducted a forensic evaluation and concluded Mr. Gabrion neither wrote nor forced Ms. Timmerman to write letters to her father and the judge and prosecutor on the rape case; (2) all writings, work sheets, and digital files reflecting work done during the above described forensic evaluation; (3) the complete file of FBI Special Agent Stephen K. Kives who

wrote the report describing the evaluation but apparently did not participate in the forensic evaluation; (4) copies of all writings that were used in the forensic evaluation; (5) memos, emails, and other writings, whether written or in digital format, generated regarding the evaluation between the examiners or between the examiners and representatives of the government, including any review of said examination.

Good cause exists for the production of this discovery.  After Ms. Timmerman disappeared but before her body was found, letters were sent to her father and to the prosecutor and judge on the rape case.  These letters were introduced at trial.  The letters exonerated Mr. Gabrion of the rape allegations and informed her father she had run off with the man of her dreams.  The government beat the drum in both guilt and penalty phases, arguing, *inter alia*, that "the defendant was writing these letters himself" and that Ms. Timmerman was merely following Mr. Gabrion's "script."  "The fact she followed the script that the defendant gave her of what happened on the rape shows you that he had her in his clutches" [TR 1687].  The letters potently advanced the government's theory that Mr. Gabrion planned and premeditated Ms. Timmerman's killing in order to prevent her from testifying against him in the state proceedings.

The government made these representations at trial in spite of the fact that it had in its possession a forensic evaluation done by its own evaluators that showed Mr. Gabrion probably did not dictate the letters and Ms. Timmerman was likely not under duress when she wrote them.

Gabrion has alleged these facts support his claims that the government left a false and misleading impression with the jury that there was no question Mr. Gabrion was the author of the letters.  Because it appears the forensic report was produced by the government prior to trial, it is also alleged counsel was ineffective for failure to object to the government's statements and arguments that Gabrion forced Ms. Timmerman to write the letters. The government now claims

the examiners were equivocal and did not have other information at their disposal which would have impacted the evaluation. There is good cause to order production of the requested material.

3. Mr. Gabrion seeks discovery of the records of Liz's House relating to Rachel Timmerman and her probation under Docket No. 96-006243-FH. Movant's 2255 petition, Claim 3I, alleges trial counsel ineffective for their failure to investigate that Rachel Timmerman had a motive to disappear or leave the area, which was unrelated to Mr. Gabrion. Specifically, Ms. Timmerman's probation officer had apparently ordered Ms. Timmerman to leave her father's home and to reside in a group home (Liz's House) in downtown Grand Rapids due to Ms. Timmerman's failures to comply with the conditions of probation. Mr. Gabrion is entitled to all information, including documents and things, relating to the decision to send Ms. Timmerman to Liz's House.

4. Mr. Gabrion seeks discovery of the Newaygo County Prosecuting Attorney's file in the matter of People v. Rachel Timmerman. Movant's 2255 petition, Claim 3I, alleges trial counsel ineffective for their failure to investigate that Rachel Timmerman had a motive to disappear or leave the area, which was unrelated to Movant. Specifically, Ms. Timmerman's probation officer had apparently ordered Ms. Timmerman to leave her father's home and to reside in a group home (Liz's House) due to Ms. Timmerman's failures to comply with the conditions of probation. Movant believes that this file would likely contain evidence relevant to this claim. Additionally, Movant has also claimed that there were others with motive to murder Ms. Timmerman due to her involvement with illegal narcotics and Movant believes that good cause exists supporting production of the file.

5. Mr. Gabrion seeks discovery of Probation's file in the matter of People of the State of Michigan v. Rachel Timmerman, Docket No. 96-006243-FH. Movant's 2255 petition, Claim 3I, alleges trial counsel ineffective for their failure to investigate that Rachel Timmerman had a motive to disappear or leave the area, which was unrelated to Movant. Specifically, Ms. Timmerman's

probation officer had apparently ordered Ms. Timmerman to leave her father's home and to reside in a group home (Liz's House) due to Ms. Timmerman's failures to comply with the conditions of probation.   Movant believes that this file would likely contain evidence relevant to this claim. Additionally, Movant has also claimed that there were others with motive to murder Ms. Timmerman due to her involvement with illegal narcotics and Movant believes that this file would have evidence relevant to that issue.

6.      Mr. Gabrion seeks discovery of the medical and mental health records regarding Government's witness Lloyd Westcomb.  Movant's 2255 petition, Claim 3Q alleges trial counsel ineffective for failing to impeach Westcomb.  Movant believes that the medical and mental health records of Westcomb would contain evidence relevant to his ability to competently and accurately testify as well as information that could have been used for impeachment purposes.

7.      Mr. Gabrion seeks discovery of all information in the Government's possession regarding the following: fire at Wilma Babcock's alleged by the Government to be started by Gabrion; the disappearance and/or death of Robert Allen, Wayne Davis and John Weeks.  This includes but is not limited to: tips, witness interviews, forensic reports, missing person reports, etc. Movant has alleged in his 2255 petition at Claim 4G that trial counsel was ineffective for failing to investigate and object to inadmissible evidence at the penalty phase of his trial.

8.      Mr. Gabrion seeks discovery of all evidence in the government's possession regarding the whereabouts of Shannon VerHage.  Specifically, Movant is seeking any and all items in the Government's possession which tends to show that Shannon VerHage might still be alive.  At trial, the Government argued that Ms. VerHage was dead and that Movant had killed her.  The Government produced no evidence to support this argument and in fact in statements to the media, Chrystal Roach, then a special assistant with the Government, claimed that there was evidence Ms.

VerHage had left the state alive.  In Movant's 2255 petition at Claim 4G, Movant has alleged his counsel were ineffective for failing to object to inadmissible and prejudicial testimony and argument at the penalty phase.  Movant believes that the requested items are relevant and will lead to the discovery of admissible evidence as to this Claim.

9.      Mr. Gabrion seeks discovery of all evidence regarding any agreements between the government and Jason Cross or other consideration that the government extended to Jason Cross, written or otherwise. Cross was a federal inmate who testified against Movant at the penalty phase of the trial.   Movant has alleged in his 2255 petition at Claim 4P that trial counsel were ineffective in their investigation and cross-examination of Cross.

10.      Mr. Gabrion seeks discovery of any and all evidence regarding Psychology Data Systems information on Movant.  Among the sources of information reviewed by Dr. DeMier for his competency evaluation on Movant were "records from Psychology Data Systems, the BOP's electronic psychology file, regarding the defendant's interactions with BOP psychologists between October 30, 1997, and July 27, 2001."  See, DeMier report at p. 4.  This information does not appear to have been provided to counsel at trial.  Movant has alleged in his 2255 petition that he was tried and sentenced while he was incompetent.  The requested information is directly relevant to the opinion of Dr. DeMier, a significant disputed issue in this case.

11.      Mr. Gabrion seeks the production of all files maintained by the Newaygo County Prosecuting Attorney's Office regarding his CSC prosecution based on the complaint by Rachel Timmerman.  Mr. Gabrion believes that the file will contain information that directly contradicts material portions of the testimony of Chrystal Roach.  Movant's issues regarding Ms. Roach are crucial to both the guilty phase and penalty phase of the case.  The government argues in its response that it is not clear that Ms. Roach testified in a manner that was incorrect.  A review of the

file will allow the Movant to present additional facts that might help resolve this dispute.  This is one of the most important issues raised regarding both the guilt phase and the penalty phase.  It relates directly to the motive offered at trial for the murder of Ms. Timmerman.

12.    Mr. Gabrion requests the production of all policy documents maintained by the NCPAO regarding whether preliminary exams should be conducted in specific types of cases, including assaultive cases.  In light of the fact that court records show that no such examinations were conducted, directly contradicting the Roach testimony, the policy documents would be crucial to this matter.

13.    Mr. Gabrion requests a list of all preliminary examinations conducted by the NCPAO from January 1, 1997 until December 31, 2001.  This information would show whether Ms. Roach ever conducted an examination from the time Mr. Gabrion was charged with CSC until Ms. Roach testified at trial.

14.    Mr. Gabrion seeks to obtain all files maintained by any institution housing Marvin Gabrion for the time period including January 1, 1997 to date.  These documents are relevant to an evaluation of Mr. Gabrion's mental state, one of the most important issues in this case.  Mr. Gabrion has been unable to obtain many of these documents because he has no right to conduct discovery.

15.    Mr. Gabrion seeks production of any documents or digital data in the possession of the government concerning Mr. Gabrion's social security disability assessments and payments.  In his § 2255 motion, Gabrion alleges his counsel was ineffective because they failed to properly litigate his incompetency claims and failed to properly litigate Mr. Gabrion's capital penalty phase. Specifically, it is claimed trial counsel failed to obtain all necessary records, and failed to conduct a

proper investigation into the fact that Mr. Gabrion was required to have a payee for his social security benefits.

The social security records are integral to this claim.  Social security claims they gave the records to the government.  There is a memo in counsel's file from the mitigation investigator noting his efforts to secure these records and indicating their importance.  However, counsel's file is devoid of such records.  If the government has them, they should be ordered to produce them.  Good cause has been demonstrated.

16.    Copies of any video or other media showing the government's press conference of June 29, 1999 regarding the prosecution of Marvin Gabrion.

17.    Disclosure of any information identifying Matt Singerman, who withdrew Mr. Gabrion's Newaygo County Court file in the case charging Mr. Gabrion with CSC involving Rachel Timmerman.

18.    A request to admit, directed to the NCPAO, requesting the admission that the office conducted no preliminary examinations solely at its request in any case involving an element of assault for the time period including January 1, 1997 to December 31, 2001.

19.    Interview summaries of all persons who reported that they saw Rachel Timmerman alive after June 2, 1997.  Such information would directly contradict the government's theory of the case.

20.    All documents and things including instructions and training materials provided to AUSA's by the BOP or DOJ regarding disciplinary regulations for the time period including January 1, 1999 to April 1, 2002.  Such information would allow 2255 counsel and the Court to know whether the AUSA's handling the case were aware of the many safeguards available to the BOP to

guarantee that Mr. Gabrion would not be a danger to others while in prison.  If such materials exist, they contradict the position advanced by the government at trial.

21.    Identification by the Office of the Federal Defender of all clients it represented in any investigation for which Marvin Gabrion was a target for the time period June 1, 1997 to April 1, 2002.  This information is crucial to Mr. Gabrion's claim regarding the right to conflict free counsel.

22.    Copies of all correspondence between the Court or staff and Marvin Gabrion for the time period including June 1, 1997 to the present.  These documents directly relate to Mr. Gabrion's mental state.

23.    Records maintained by United States Probation in the social security fraud case entitled United States v. Gabrion which relate to Mr. Gabrion's disability status.  Mr. Gabrion believes that the records may be found in the probation file because they would have been highly relevant to his sentencing in that case.  Mr. Gabrion has described above why the records are so important here.

24.    Mr. Gabrion requests the production of all documents and things relating to the potential testimony of the late Walter Hamilton.  Mr. Gabrion's investigator interviewed Mr. Hamilton.  He said that he appeared at proceedings in the Federal Building in Grand Rapids and was interviewed by agents.  He said that agents released him after telling him that his recollection of events involving conversations with Linda Hamilton was inconsistent with Ms. Hamilton's recollection.  Ms. Hamilton was called as a witness at trial.  Mr. Gabrion is entitled to know the details of any inconsistencies and is entitled to see any reports that relate to Hamilton.  Good cause exists for this discovery.

**WHEREFORE**, Mr. Gabrion moves this Court to enter an order granting leave for

Movant to conduct the discovery described in this motion.  He acknowledges that copies of all

discovery requests will be served on the government.

| | |
|---|---|
| **Dated:  January 29, 2016** | **Respectfully submitted,** |

By:  /s/ *Monica Foster*                                     By:  /s/ *Joseph M. Cleary*

       Monica Foster                                           Joseph M. Cleary

       Attorney for Movant                               Attorney for Movant

Business Address:                                      Business Address:

Indiana Federal Community Defenders, Inc.     Indiana Federal Community Defenders, Inc.

111 Monument Circle, Suite 2150             111 Monument Circle, Suite 2150

Indianapolis, Indiana 46204                 Indianapolis, Indiana 46204

(317) 383-3520                                   (317) 383-3520

By:  /s/ *Scott Graham*

       Scott Graham

       Attorney for Movant

Business Address:

SCOTT GRAHAM PLLC

1911 West Centre Avenue, Suite C

Portage, Michigan 49024

(269) 327.0585

10