## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARVIN CHARLES GABRION, II,                    1:15-CV-00447

    Movant,                                    (Criminal Case 1:99-CR-76)

v                                              Honorable Robert Holmes Bell
                                               U.S. District Judge
UNITED STATES OF AMERICA,

    Respondent.

---

## MARVIN GABRION'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DEPOSITIONS ON ORAL EXAMINATION

---

Marvin Gabrion has moved for relief under 28 U.S.C. § 2255 and the government has responded.  Mr. Gabrion now requests leave to conduct discovery in the form of oral depositions pursuant to F.R.Civ.P. 30. Mr. Gabrion describes below the relevant legal standard to be applied to his request and the reasons why good cause exists supporting leave to take the depositions.

### A.    Introduction

Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts gives this Court express authority to order discovery:

> A party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Criminal Procedure[1] or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Rule 6(a) incorporates the United States Supreme Court's directive that a federal habeas corpus petitioner is "'entitled to careful consideration and plenary processing of [his claims,]

---

[1] Rule 6 for §2255 proceedings differs from the corresponding discovery rule under the §2254 rules in that it includes the processes of discovery available under the Federal Rules of Criminal Procedure as well as the civil.  Although a Section 2255 applicant is more accurately described as a Movant, rather than a Petitioner, Mr. Gabrion will occasionally use the term Petitioner to remain consistent with the Rules.

including full opportunity for presentation of the relevant facts.'" *Harris v. Nelson*, 394 U.S. 286, 298 (1969); *see also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977); *Cf.* Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Note to Rule 6 ("Subdivision (a) is consistent with *Harris v. Nelson*").[2]

### B.    Good Cause

This Court may grant the movant in Section 2255 proceedings leave to conduct discovery when "good cause" for doing so is shown. Under guiding principles of the United States Supreme Court, such "good cause" is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997).[3] *See also Holley v. Smith*, 792 F.2d 1046 (11th Cir.1986)(the rules governing discovery in ordinary civil cases are applicable to Section 2255 motions to the extent authorized by the court for good cause shown).

A movant who has (1) made specific allegations warranting relief, (2) shown why the requested information is essential to the adequate factual development of his claims, and (3) demonstrated that the requested information is likely in the hands of the party from whom discovery is sought and cannot be obtained through other means, has established "good cause" under *Bracy* and Rule 6. *See, e.g., Willis v. Newsome*, 771 F.2d 1445 (11th Cir. 1985)(in federal habeas corpus actions, where specific allegations before the court show reasons to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally

---

[2] The Advisory Committee Notes to the Rules Governing Section 2254 Cases in the United States District Courts are "fully applicable to discovery under [the analogous Rule] for Section 2255 motions." Advisory Committee Notes to Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts.

[3] By contrast, the Supreme Court has indicated that such good cause is absent when the petitioner's allegations are patently frivolous (*i.e.*, the product of "fantasy which has its basis in the paranoia of prison rather than fact." *Harris*, 394 U.S. at 300)

and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry); *Willis v. Zant*, 720 F.2d 1212 (11th Cir. 1983)(petitioner's claim that young adults were underrepresented in the jury pool remanded to the district court for an evidentiary hearing, and, if necessary, discovery); *Horton v. Zant*, 687 F. Supp. 594 (M.D. GA.1988)(discovery ordered "to permit petitioner's counsel to ascertain the facts" to support his *Swain v. Alabama* claim). *See also Murphy v. Johnson*, 205 F.3d 809, 813-814 (5th Cir. 2000) ("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he [is] entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry"); *East v. Scott*, 55 F.3d 996 (5th Cir. 1995) (although a "district court generally has discretion to grant or deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts"). So long as the information before the court "support[s] the inferences" of constitutional deprivation alleged by the movant, "good cause" exists and discovery is mandated if "[t]he information requested by the petitioner would tend to prove or disprove the validity of such inferences and is relevant to petitioner's claim." *Rice v. Black*, 112 F.R.D. 620, 626 (D. Neb. 1986).

It should also be noted that in a Section 2255 case, like all civil cases, discovery necessarily precedes resolution of claims on summary judgment. To be entitled to discovery, Mr. Gabrion need not conclusively establish his entitlement to relief on the merits of his claims. *Payne v. Bell*, 89 F. Supp.2d 967, 971 (W.D. Tenn. 2000)(good cause to grant discovery is not as high as the standard for granting relief or even that for granting an evidentiary hearing).

### C.    Discovery Is Especially Warranted in a Capital Case

The policies favoring discovery are even stronger in capital cases than in noncapital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland, v. Scott,* 512 U.S. 849, 855 (1994).

In exercising its discretion and in determining whether Mr. Gabrion has established "good cause" for the requested discovery, this Court should be guided by the recognition that habeas corpus litigation is a <u>civil</u> proceeding, and the more limited rules addressing discovery in criminal cases do not control. *See e.g., Pennsylvania v. Finley,* 481 U.S. 551, 556 (1987) (habeas proceeding is "not part of the criminal proceeding itself, and it is in fact considered to be civil in nature."), citing, *Fay v. Noia,* 372 U.S. 391, 423-424 (1963 ); *Browder v. Director Department of Corrections*, 434 U.S. 257, 269 (1978 ) ("It is well settled that habeas corpus is a civil proceeding"); *Murray v. Giarratano,* 492 U.S. 1, 8 (1989); *Houston v. Lack,* 487 U.S. 266, 272 (1988); *Hilton v. Braunskill,* 481 U.S. 770, 775-76 & n.5 (1987) ("Our decisions have consistently recognized that habeas corpus proceedings are civil in nature. . . Where [] the need is evident for principles to guide the conduct of habeas proceedings, it is entirely appropriate to 'use . . . [civil] rules by analogy or otherwise'") (*quoting Harris v. Nelson,* 394 U.S. 286, 294 (1969)); *Browder v. Director,* 434 U.S. 257, 269 (1978).[4]

---

[4] <u>See also</u> Fed.R.Civ.P. 81(a)(2) (Federal Rules of Civil Procedure "are applicable to . . . habeas corpus" proceedings); *Gaugler v. Brierley,* 477 F.2d 516, 523 (3d Cir. 1973) ("federal habeas corpus proceedings are civil . . . in nature. They are governed by the Federal Rules of Civil Procedure.")

Because this is a death penalty case, broad discovery is necessary to ensure that extra measure of process which is demanded in capital cases. "[I]f death is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims." *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987). In fact, the capital petitioner who fails to request full discovery in his initial habeas petition may lose his life because he failed to investigate his case earlier. *Tucker v. Kemp*, 819 F.2d 978, 981 (11th Cir. 1987)(on eve of execution, court found abuse of the writ and denied relief, where capital petitioner failed to seek discovery during first habeas proceeding). Given the gravity of this capital case, Mr. Gabrion requests this Court's leave to conduct discovery which will enable him to fully investigate, develop, and present any and all relevant constitutional claims for relief in his initial capital §2255 motion.

When a habeas petitioner has shown good cause for the discovery (i.e., he has shown that the requested discovery will assist in proving the facts pled, which in turn would entitle him to relief) discovery must be allowed: "it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *Bracy,* 520 U.S. at 909.[5] Since the purpose of post-conviction discovery "is to ensure that the facts underlying a [habeas] claim are adequately developed." *Johnston v. Love,* 165 F.R.D. 444, 445 (E.D. Pa. 1996), discovery is appropriate whenever "a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief," and it may not be denied "if there is a sound basis for concluding that the requested discovery might allow him to demonstrate" his entitlement to relief. *Id.*

---

[5] *Accord McDaniel v. United States District Court,* 127 F.3d 886, 888 (9th Cir. 1997) (where Petitioner "presented specific allegations . . .[he] is entitled to discovery"); *Johnston v. Love,* 165 F.R.D. 444, 445 (E.D. Pa. 1996) (Rule 6's "history makes clear that its purpose is to ensure that the facts underlying a habeas corpus claim are adequately developed, and that it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for [relief].

Before discovery is warranted under Habeas Rule 6(a), courts require that the petitioner first set out specific allegations of fact supporting his claims for relief. *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (citing *Willie v. Maggio*, 737 F.2d 1372 (5th Cir.), *cert. denied*, 469 U.S. 1002 (1984)).[6] Further, the petitioner must have some reason to believe that the requested information exists. *Kirkpatrick v. Whitley*, 992 F.2d 491, 496 (5th Cir. 1993).

Habeas Rule 6(a) incorporates the Supreme Court's directive that a federal habeas corpus petitioner is "entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts." *Harris v. Nelson*, 394 U.S. 286, 298 (1969); *see also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977); *see also Rules Governing Section 2254 Cases in the United States District Courts*, Advisory Committee Note to Rule 6 (West 2000) ("Subdivision (a) is consistent with *Harris v. Nelson*").

In short, a movant such as Mr. Gabrion who has (1) made specific allegations warranting relief, (2) shown why the requested information is essential to the adequate factual development of his claims, and (3) demonstrated that the requested information is likely in the hands of the party or agency from whom discovery is sought and cannot be obtained through other means, has established "good cause" under *Bracy* and Rule 6. *See, e.g., Willis v. Newsome,* 771 F.2d 1445 (11th Cir. 1985)(in federal *habeas corpus* actions, where specific allegations before the court show reasons to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry); *Willis v. Zant,* 720 F.2d 1212 (11th Cir. 1983) (petitioner's claim that young adults were under-represented in the jury pool remanded to the district

---

[6] *See also, e.g., Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.) ("good cause" under Rule 6(a) "cannot exist where the facts alleged do not provide a basis for relief"), *cert. denied*, 498 U.S. 878 (1990).

court for an evidentiary hearing, and, if necessary, discovery); *Horton v. Zant,* 687 F. Supp. 594 (M.D. GA.1988) (discovery ordered "to permit petitioner's counsel to ascertain the facts" to support his *Swain v. Alabama* claim); *see also Murphy v. Johnson,* 205 F.3d 809, 813-814 (5th Cir. 2000) ("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he [is] entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry"); *East v. Scott,* 55 F.3d 996 (5th Cir. 1995) (although a "district court generally has discretion to grant or deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts").

So long as the information before the court "support[s] the inferences" of constitutional deprivation alleged by the petitioner, "good cause" exists and discovery is mandated if "[t]he information requested by the petitioner would tend to prove or disprove the validity of such inferences and is relevant to petitioner's claim." *Rice v. Black,* 112 F.R.D. 620, 626 (D. Neb. 1986). *See e.g., Rice v. Clarke,* 923 F.2d 117, 118-19 (8th Cir. 1991)(discovery of relevant FBI records required); *East v. Scott,* 55 F.3d at 1001 (where petitioner alleged *Brady* violation, entitled to discovery to prove allegations) *granting relief after discovery, East v. Johnson,* 1997 WL 570214 (5th Cir. 1997); *Teague v. Scott,* 60 F.3d 1167 (5th Cir. 1995); *Toney v. Gammon,* 79 F.3d 693 (8th Cir. 1996) (petitioner is entitled to discovery of physical evidence to establish constitutional claims).

Mr. Gabrion need not allege all of the facts that will ultimately entitle him to relief, but only sufficient facts offering reason to believe that he will be entitled to relief if he gets discovery.  This only makes sense: at this state, Mr. Gabrion has not had the benefit of discovery and has had to rely on document requests which do not carry the force of law to obtain records from government agencies and third-party sources.

**D.**    **The Specifics of Mr. Gabrion's Request for Discovery in the Form of Depositions on Oral Questions**

Mr. Gabrion contends that good cause exists to support discovery in the form of depositions of persons whose actions were crucial to what happened or did not happen at this trial.

**Trial Counsel** – Paul Mitchell and David Stebbins acted as trial counsel in this case.  Their handling of all aspects of the defense, from early competency issues to the defense case during the penalty phase, is one of the primary subjects of the 2255 motion.  Mr. Gabrion has alleged that trial counsel failed to properly investigate and present matters relating to his competency (3A), resulting in a situation in which competency issues were never tested based on a hearing before this Court.  He has alleged that trial counsel failed to take steps to guarantee that Mr. Gabrion was properly medicated. (3B)  He has alleged that trial counsel failed to investigate and test the government's case at the guilty phase.  (3C)  He has alleged that trial counsel did not retain experts regarding crucial issues, despite the fact that the government relied heavily on its experts.  (3D)  He has alleged that counsel failed to secure adequate funding to defend the case, and failed to request appropriate continuances or take other steps designed to obtain time and funds.  (3E, F and G)  He has alleged that trial counsel failed to object to improper argument and evidence from the government, all to Mr. Gabrion's detriment. (3H, I and J)  He has alleged that trial counsel failed to present crucial handwriting evidence and failed to challenge crucial inaccurate testimony by Chrystal Roach.  (3K and L)  He has alleged that trial counsel failed to present available evidence indicating that someone else may have committed the crime and failed to object to improper closing argument.  (3Nand O)  He has alleged that trial counsel failed to retain a pathologist and failed to impeach a crucial government witness.  (3P and Q)  He has alleged that counsel should have moved to withdraw and that counsel did not fully investigate crucial government evidence.  (3R-U)

Mr. Gabrion pled his claims regarding the performance of counsel at the guilt phase is detailed in his 2255 motion, which he incorporates here.  If even one of the claims is proven to be

true, Mr. Gabrion will be entitled to relief on the motion.  Certainly, he has established good cause to depose trial counsel in order to determine what counsel did and did not do in order to deal with mental health issues and in order to defend the guilt phase of the proceedings.

Mr. Gabrion's allegations about the performance of trial counsel at the penalty phase are just as detailed and important.  He claims that counsel failed to present a multi-generational family history, and explains evidence that would have been uncovered.  (4A)  Mr. Gabrion has developed a family history covering 4 generations, as would be expected in a case like this – especially a case in which the defense theory at the penalty phase conceded so many things about Mr. Gabrion.  2255 counsel are entitled to determine why trial counsel chose a specific approach at trial and are entitled to know what work was considered and ordered by counsel.  This evidence would have been crucial to the defense position at sentencing.

The same is true of a social history.  (4B)  Mr. Gabrion has alleged numerous facts that would have shown a much different picture of him if they had been presented at the penalty phase.

Mr. Gabrion also alleges that trial counsel failed to obtain adequate records to support his position at sentencing, and failed to secure and properly prepare expert witnesses who would have assisted the defense.  (4C and D)

Trial counsel allowed the government to disparage Mr. Gabrion with theories and facts that were irrelevant, unfairly prejudicial and inaccurate.  Mr. Gabrion has identified these matters.  (4E-H)

Mr. Gabrion has further identified trial counsel's utter failure to deal with the future dangerousness issue that was so important to the penalty phase.  (4K)  Counsel should explain why this approach was chosen.

Mr. Gabrion has alleged other specifics of his sentencing representation.  He has established good cause why the depositions of trial counsel should be taken in this case.  There is no other way

to determine why crucial decisions were made.  Mr. Gabrion needs to depose both attorneys in order to understand exactly how they evaluated and prepared the defense in this case, both at the guilt and penalty phases.  More specifically, in part, Mr. Gabrion's present counsel need to further investigate the facts relating to trial counsel's evaluation of the mental health issues in the case, their response to the government's evidence supporting the alleged motive that Mr. Gabrion manipulated the preliminary examination process in order to gain access to Ms. Timmerman, their preparation of a mitigation case to be presented at the penalty phase of the case, their handling of expert witnesses who attempted to provide testimony regarding mental health issues, their handling of the government's theory that Mr. Gabrion was "malingering" and their failure to take steps to limit the government's evidence in aggravation at the penalty phase.

**Mitigation Specialist and Fact Investigator** – James Crates served as a mitigation specialist in this case and Patricia Hubbard served as a fact investigator.  Mr. Gabrion alleges that the mitigation case was incomplete and that additional facts could have been gathered that would have been favorable to the defense, both at the guilt and penalty phases.  For example, the defense at trial prepared an eight (8) page document that was apparently considered to be a social history.  The importance of a thorough social history in a capital case is well accepted.  Mr. Gabrion's 2255 team has prepared a 4 generation social history that is more than ten times as long as the trial history.  This was done despite the fact that the crime involved happened almost 20 years ago.  Counsel is entitled to question Mr. Crates and Ms. Hubbard about their work in the crucial investigative issues involved in this case that related to the penalty phase.  Ms. Hubbard will also be able to describe guilt phase investigative work.  It is impossible to determine how the case was defended without questioning the only two investigators who supported the work of trial counsel.

**Consulting Counsel** – The Honorable Christopher Yates served as the Federal Defender during this case.  He represented witnesses at the Grand Jury who testified against Mr. Gabrion.  But

he also provided assistance to Mr. Gabrion and the trial attorneys.  2255 counsel is entitled to depose Judge Yates in order to determine precisely what work he did for Mr. Gabrion and other clients involved in the investigation into Ms. Timmerman's death.

**Chrystal Roach**.  Chrystal Roach was the Newaygo County Prosecuting Attorney.  She provided the only testimony that supported the government's theory that Mr. Gabrion manipulated the timing of proceedings against him in order to have the chance to kill Ms. Timmerman before she testified against him.  Mr. Gabrion has demonstrated that Ms. Roach's testimony is contradicted by court records, a transcript of proceedings and the affidavit of Mr. Gabrion's state court trial counsel. 2255 counsel is entitled to depose Ms. Roach in order to determine precisely what policies existed in her office regarding preliminary examinations, whether exams were conducted in other CSC cases, and whether her trial testimony was truthful.  Ms. Roach was the most important witness offered in support of the government's theory about Mr. Gabrion's motive for murdering Rachel Timmerman. The serious questions raised about her testimony should be explored by deposition.

**FBI agents who conducted handwriting analysis – SSA's Sue Adams and Chris Whitcomb** of the FBI evaluated letters written by Rachel Timmerman to her father and formed the opinion that Ms. Timmerman was "probably not under extreme duress when she penned the letters and GABRION probably did not dictate the letters to her."  (Ex.1.4; Page ID#448)  Despite the fact that the government placed great reliance on the fact that Mr. Gabrion dictated the letters to Ms. Timmerman and forced her to write them, the Agents were not called as witnesses at trial. Their testimony would have been crucial.  2255 counsel should be able to depose these agents and question trial counsel about their knowledge of the report and the reasons why the Agents were not used at trial.

**Mental Health Experts** – Mr. Gabrion should be allowed to depose **Gregory Scharre, M.D., Newton Jackson, M.D., David Griesemer, M.D., Thomas Ryan and Gregory Saathoff,**

**M.D., Dr. Waalkes**.  Each testified as an expert at the penalty phase of this case.  Each did not have the benefit of the 4 generation family history that has been compiled.  It is crucial to the present motion for the Court to know if the history and other information that was not presented to these experts would have changed their opinions.  All such information was available at the time of trial.

  **Stephen Cohle, M.D.**  Dr. Cohle testified at the guilt and penalty phases.  He testified about Rachel Timmerman's cause of death.  Mr. Gabrion wishes to depose Dr. Cohle because additional facts and circumstances have come to light that might impact his opinions.

  **Michael Chamberlain and Lance Workman**.  Officers with the Mecosta County Deputy Sheriff. They were present during a crucial event.  They entered Mr. Gabrion's residence in Altona with other officers.  At some point, officers noticed a bullfrog positioned next to a doll.  They thought one or both items were covered in "bodily fluid."  This information was introduced by the government at the penalty phase.  However, it does not appear in any police report describing the incident.  It does not appear in the 13 page letter that the government gave the defense prior to the start of the penalty phase.  The evidence appeared without a source and was very damaging to Mr. Gabrion.  The officers should be deposed so that 2255 counsel can determine what they saw, why it was not included in a report and how the government learned the information in order to present it at sentencing.

  **Richard Miller**. Michigan State Police Sergeant Richard Miller was the lead state investigator in this case.  He testified at length before the grand jury and testified at trial.  He questioned key witnesses about things like Mr. Gabrion's motive.  He investigated leads regarding other suspects.  He investigated tips regarding Shannon Verhage.  2255 counsel has claimed that he was not fully and properly questioned or presented as a witness.  He should be deposed so that the Court fully understands what he knows about the case and what could have been presented.

**WHEREFORE**, Marvin Gabrion II moves this Court to enter an order granting leave for Mr. Gabrion to depose on oral examination the following: David Stebbins, Paul Mitchell, the Honorable Christopher Yates, James Crates, Patricia Hubbard, Chrystal Roach, Sue Adams, Chris Whitcomb, Gregory Scharre, Newton Jackson, David Griesemer, Thomas Ryan, Gregory Saathoff, Stephen Cohle, Michael Chamberlain, Lance Workman and Richard Miller.

Dated:  January 29, 2016

Respectfully submitted,

By:  /s/ *Monica Foster*
      Monica Foster
      Attorney for Movant
Business Address:
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 2150
Indianapolis, Indiana 46204
(317) 383-3520

By:  /s/ *Scott Graham*
      Scott Graham
      Attorney for Movant
Business Address:
SCOTT GRAHAM PLLC
1911 West Centre Avenue, Suite C
Portage, Michigan 49024
(269) 327.0585

By:  /s/ *Joseph M. Cleary*
      Joseph M. Cleary
      Attorney for Movant
Business Address:
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 2150
Indianapolis, Indiana 46204
(317) 383-3520