UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN GABRION,

       Movant,

                                    Case No: 1:15-CV-447
v.                                    (Criminal Case No. 1:99-CR-76)

UNITED STATES OF AMERICA,             Hon. Robert Holmes Bell
                                         U.S. District Judge

       Respondent.
_____/

**GOVERNMENT'S RESPONSE TO AMENDED BRIEF TO CONDUCT DISCOVERY IN THE FORM OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS AND REQUESTS TO ADMIT**

The government respectfully submits this response to Gabrion's amended motion to conduct written discovery (ECF No. 67).[1]  The government continues to rely on, and incorporates by reference, its omnibus response to Gabrion's original motions for discovery (ECF No. 61).  As set forth in that response, in the government's view, the most efficient manner of resolving this matter is the one contemplated by the 2255 Rules: Gabrion's current counsel should file any amended motion, the government should be permitted to file a supplemental response, and only after the Court considers the motion and the answer, should the Court entertain a request for discovery as to any claims that survive the Court's initial review of the pleadings.  Other courts have followed this course in capital cases.  *See, e.g., United States v. Edward Fields*, No. CIV-10-115-RAW, 2011 WL 3566934, at *1 (E.D. Okla. Aug. 15, 2011).

---

[1] Gabrion has not filed an amended brief in support of his request to take oral depositions (ECF Nos. 58 (Mot.) & 59 (Br.).)  At the hearing, Gabrion's current counsel withdrew two of the requests (Dr. Scharre and Officer Chamberlain).  As to the remaining requests, the government maintains that the requests are premature and not supported by good cause in support of specific allegations that could lead to habeas relief, *see* ECF No. 61, at ID#2586.

The plain fact is this: as currently pleaded, all of Gabrion's claims fail as a matter of law; the ineffective assistance of counsel claims cannot survive *Strickland* scrutiny even if further facts are developed, and the other claims are equally devoid of merit.  Thus, although Gabrion's amended motion purports to tether the proposed requests to specific claims, Gabrion still has not satisfied the "good cause" standard: he has not made specific allegations showing reason to believe that the facts, if fully developed, *may lead this Court to believe that habeas relief is appropriate*. *Post v. Bradshaw*, 621 F.3d 406, 425 (6th Cir. 2010) (emphasis added).  If a claim fails as a matter of law, regardless of how the facts are developed, he has not shown good cause. *Barnette v. United States*, No. 3:12-cv-321, 2014 WL 234817, at *2 (W.D.N.C. Jan. 22, 2014).

In applying these standards, the government reiterates its reliance on *United States v. Sherman Fields*, 761 F.3d 443, 478 (5th Cir.), *as revised* (Sept. 2, 2014), *cert. denied*, 135 S. Ct. 2803 (2015).  There, the defense sought discovery to support claims nearly identical to Gabrion's: "Fields's arguments center on the specific mitigation evidence that he claims his trial counsel should have uncovered and presented during the penalty phase of the trial. This includes evidence of the terrible poverty, neglect, abuse, and trauma that he faced while growing up, his potential brain damage, his history of incarceration, and his mental illness and family history of mental illness." *Id.* at 452-53.  The district court denied the § 2255 motion without conducting an evidentiary hearing and denied Fields's request for discovery.  The Fifth Circuit denied a certificate of appealability, noting that Fields had not provided specific allegations that could demonstrate entitlement to relief if the facts were fully developed. *See id.* at 484.  Gabrion has likewise failed to assert such allegations.

As to his requests, the government responds as follows:

### 1. Information, documents, and things provided to Dr. David Griesemer.

Gabrion speculates that the government did not provide his trial attorneys with all the materials reviewed by Dr. Griesemer, one of the government's penalty phase rebuttal witnesses. This speculation is based solely on the fact that the page numbers Dr. Griesemer references in a letter do not correspond to the page numbers found in the discovery.  Gabrion claims that this request relates to his Claim 3A, which alleges that his counsel was ineffective for failing to properly litigate his competency claims.  But Dr. Griesemer was a penalty phase *rebuttal* witness; the competency evaluations—all three of them—were conducted by other mental health experts.  Gabrion has made no showing that the facts, if fully developed, would support his claim for relief on Ground 3A. The government incorporates by reference its response to that claim, see ECF No. 44, at ID#2276. Likewise, Gabrion has not shown how the documents would lead to relief on Ground 4D, which alleges that Gabrion's counsel failed to adequately prepare the *defense* experts.  That claim lacks legal merit for the reasons set out in the government's response, see ECF No. 44, at ID#2321. Moreover, nowhere in his § 2255 motion does Gabrion even mention Dr. Griesemer.  In any event, Dr. Griesemer was thoroughly examined at trial concerning the bases for his opinions, and mere speculation based on a comparison of page number citations, without more, is not sufficient to establish "good cause."

### 2. Documents related to FBI handwriting examiners and FBI SA Kives's 12/19/97 report. Gabrion claims these documents are relevant to his Claim 1A.  But that claim fails as a matter of law because Gabrion concedes that the report at issue *was disclosed* to defense counsel at the time of Gabrion's trial.  *See* ECF No. 44, at ID#2251.  And, as set forth in

that response, regardless of what facts could be developed on the issue, there is a mountain of other evidence establishing that Gabrion was responsible for the content of the letters purportedly written by Rachel Timmerman.  Gabrion also lists Ground 3A, but probably means Ground 3H, which alleges ineffective assistance based on his trial counsel's alleged failure to make better use of the report.  That claim is likewise baseless, see ECF No. 44, at ID#2287, and no amount of discovery would support habeas relief.

**3-5.  Records pertaining to Rachel Timmerman's file under Docket No. 96-006423-FH.**  Gabrion alleges that these requests are relevant to his Claim 3I.  That claim speculates that Timmerman had her own reasons to "disappear" in early June 1997; however, for the reasons set forth in the government's response, see ECF No. 44, at ID#2288, that claim is meritless.  Even if Gabrion discovers facts that favor his position—that Timmerman had reasons for wanting to leave town—that does not undermine any of the evidence that Gabrion nonetheless killed her.  The evidence on that was "overwhelming," as the court of appeals said three times.  The evidence supporting the aggravating factors was likewise "overwhelming."  Additional factual support for this claim would not lead this Court to believe that habeas relief is warranted.

**6.   Mental and medical health records regarding Lloyd Westcomb.** Westcomb acknowledged on the stand that he suffered from paranoid schizophrenia and was thoroughly and effectively cross-examined concerning his mental health (as this Court found), see ECF No. 44, at ID#2298.  No further factual development is necessary or appropriate to resolve this claim.

**7.   Information in the government's possession regarding the fire at Wilma Babcock's residence, the disappearance and/or death of Robert Allen, Wayne Davis, and John Weeks.**  Gabrion argues that this request seeks evidence to support his claim that his trial counsel was ineffective for failing to investigate and object to inadmissible penalty phase

evidence. That claim, Ground 4G, fails as a matter of law for the reasons set forth in the government's response, ECF No. 44, at ID#2326. In any event, Gabrion does not explain how information *in the government's possession* would have afforded a basis to object, or how that would bear on evaluating the adequacy of counsel's investigation. To the extent that the government had information that was exculpatory or otherwise required to be disclosed concerning these subjects, the government complied with those obligations; there is no allegation otherwise and the government is unaware of any basis on which a contrary contention could be made. There is no good cause to require the government to comb through the scores of documents in this case in the hopes that something relevant might turn up to aid the defense; that is exactly the type of fishing expedition that the good cause requirement is designed to prevent.

**8.** **All evidence in the government's possession regarding the whereabouts of Shannon VerHage.** As with the prior request, to the extent that the government was required to disclose any information concerning this subject, it was disclosed at the time of trial. Nothing in the government's possession would bear on trial counsel's failure to object or investigate such evidence. Though Gabrion asserts that "the requested items are relevant and will lead to the discovery of admissible evidence" (Am. Mot., ID#2608), that is the standard applicable in a regular civil case, where the parties are entitled to discovery as of right. This is not an ordinary civil case; Gabrion must show "good cause" for any discovery, meaning that he may succeed on a claim if the facts are further developed in support of it. He cannot make that showing as to this claim, see response to Ground 4G, ECF No. 44, at ID#2326.

**9.** **All evidence regarding any agreements between the government and Jason Cross or other consideration that the government extended to Cross, written or otherwise.** This information was required to be disclosed at the time of trial and there is no allegation that

5

the government failed to abide by its obligations.  Cross testified about this subject and about

sentence reductions he had received in exchange for cooperating in other cases.  Further, another

witness corroborated Cross's testimony.  See response to Claim 4P, ECF No. 44, at ID#2352.

**10.     All evidence regarding Psychology Data Systems (PDS) information on**

**Movant.**  Gabrion claims that this information, one of 28 items Dr. DeMier listed as having

reviewed in his report, is relevant to his Claim 3A, which alleges that his trial attorneys were

ineffective in handling the issue of his competency, and Claim 4D, which alleges that his trial

attorneys were ineffective for failing to secure documents relevant to the *penalty phase*

presentation.  But Dr. DeMier's conclusions as to Gabrion's competency do not rest on the PDS

information in any discernible respect, and Claim 3A fails as a matter of law for the reasons set

forth in the ECF No. 44, ID#2237-38, 2276.  As to Claim 4D, Gabrion has made no showing as

to how the requested information would have made a difference to his own experts, who

examined Gabrion and/or independently reviewed voluminous data concerning him. For these

reasons and those set forth in ECF No. 44, at ID#2321, the claim is meritless and further factual

development is unnecessary to resolve it.

**11.-13. Newaygo County Prosecuting Attorney's Office's records concerning**

**Gabrion's CSC case and other records concerning when they conduct preliminary**

**examinations.**  All of these requests seek information to support the notion that Chrystal Roach

"lied" when she testified that she requested a preliminary examination in Gabrion's CSC case,

which supposedly establishes that the government committed misconduct by not correcting such

"false" testimony and by arguing to the jury that Gabrion attempted to delay the trial until Rachel

Timmerman was released from jail.  This claim (1A), and the related ineffectiveness claim (3L,

6

not 3H as listed by Gabrion), are wholly without merit for the reasons set forth in ECF No. 44, at ID#2251, 2291, and the request therefore is unsupported by good cause.

14.    **All files maintained by any institution housing Marvin Gabrion for the time period including January 1, 1997, to date.**  Gabrion asserts that this broad request is necessary to develop factual support for his Claim 3A, which alleges that his trial attorneys were ineffective for failing to properly litigate his competency.  But Gabrion was examined three times for competency and any concerns about the thoroughness or adequacy of those examinations was effectively laid to rest by the court of appeals, which noted that eight mental health professionals found that Gabrion was not mentally ill and was a malingerer, see ECF No. 44, at ID#2237-38, 2276.  Moreover, Gabrion's counsel has not identified the documents and/or materials that they have not received.  *See Barnette v. United States*, 2014 WL 234817, at \*3-4 (W.D.N.C. Jan. 22, 2014) (denying similar request by capital defendant).

15.    **Documents or digital data concerning Gabrion's social security disability assessments and payments.**  Gabrion claims that this request relates to his Claim 4C, alleging ineffective assistance of counsel for failing to secure records for the penalty phase. Presumably it may also relate to his Claim 4L, concerning his receipt of SSI benefits.  Regardless of what such records show, they would not give this Court any basis to award habeas relief, see ECF No. 44, at ID#2320, 2343, and therefore Gabrion has failed to show good cause for the request.

16.    **Any video or other media showing the government's press conference of June 29, 1999 regarding the prosecution of Marvin Gabrion.**  Gabrion fails to identify a claim to which this request relates, or any basis for this Court to find that good cause supports it.

17.    **Any information identifying Matt Singerman, who allegedly withdrew Gabrion's CSC file from the Newaygo County Court.**  This request purportedly relates to

7

Claim 1A, concerning Chrystal Roach's testimony (and the related ineffectiveness Claim, 3L, not 3H as listed by Gabrion).  Gabrion has not shown how the facts, if fully developed, would lead to habeas relief on this claim—even if Singerman was associated with the federal government (which we do not presently have any reason to believe is true), there is no basis to believe that this would support a meritorious claim that the government failed to correct false testimony by Chrystal Roach.  Because the claim cannot succeed even if further factually developed, see responses to Claim 1A and 3L, ECF No. 44, at ID#2251, 2291, the request is unsupported by good cause.

18.    **Request to admit directed to NCPAO regarding when it conducts preliminary examinations.**  Gabrion asserts that this request also relates to claims 1A and 3H (sic, 3L), but those claims are legally meritless, even if the facts are developed in Gabrion's favor, see ECF No. 44, at #ID2251, 2291.  That is, even if the NCPAO never conducted preliminary examinations in assault cases, the claim still cannot succeed.

19.    **Interview summaries of all persons who reported that they saw Rachel Timmerman alive after June 3, 1997.**  Gabrion argues this request is relevant to his Claims 1C and 4J (sic, 3J), regarding witnesses who might have seen Rachel Timmerman after June 3.  As explained in the government's response, see ECF No. 44, at ID#2261, 2290, the government's theory, supported by "overwhelming evidence," was that Timmerman disappeared on June 3 and was murdered by Gabrion on or about June 6.  There *were* people who saw her after June 3, with Gabrion, shortly before she was murdered.  There is no good cause for this request.

20.    **All documents and things including instructions and training materials provided to AUSAs by the BOP or DOJ regarding disciplinary regulations.**  This request purports to relate to Gabrion's Claim 1D, alleging that the government left a "false impression"

with the jury when it "prevented" the admission of evidence concerning security measures available to BOP.  But the government did not "prevent" anything—the government objected to Dr. Cunningham's testimony on the subject because he was not qualified and the government objected to an instruction on the regulations; this Court denied the first objection and sustained the second.  The court of appeals affirmed this Court's rulings.  All of this is set out in the government's response to claim 1D, see ECF No. 44, at ID#2263.  This claim cannot succeed, regardless of whatever "training" AUSAs received, if any, concerning BOP's security regulations; therefore, the request is not supported by good cause.

21.    **Identification by the Office of the Federal Defender of all clients it represented in any investigation for which Marvin Gabrion was a target.**  Though this request is burdensome to the Federal Defender, rather than to the government, the government maintains that the request is not supported by good cause.  This is a fishing expedition unsupported by any actual factual basis; rather, Gabrion asserts "it is believed" that former Federal Defender (now Judge) Yates represented "other government witnesses" besides Joseph Lunsford.  Even as to Lunsford, the claim lacks legal merit, for the reasons set forth in the government's response to Claim 2, see ECF No. 44, at ID#2269.  And Gabrion does not set forth the factual basis giving rise to his belief that Judge Yates represented other witnesses.  Accordingly, there is no good cause supporting the request.

22.    **All correspondence between the Court or staff and Marvin Gabrion for the time period including June 1, 1997, to the present.**  Though this request is burdensome to the Court, rather than to the government, the government maintains that the request is not supported by good cause.  There is ample evidence of Gabrion's bizarre writings and other behavior in the record.  Even if additional examples of such writings or behavior were uncovered, it would not

9

afford any basis for this Court to conclude that Gabrion's trial attorneys were ineffective in handling the issue of Gabrion's competency.  Attorney Stebbins authored an affidavit detailing his concerns about his client's competency, which led this Court to order a *third* evaluation. And, in total, eight mental health experts determined that Gabrion was not mentally ill, but a malingerer.  As more fully set forth in the responses to Claims 3A and 4D, at ID#2276, 2321, the claims are legally meritless and thus the request is unsupported by good cause.

23.     **Records maintained by U.S. Probation in the social security fraud case.** Though this request is burdensome to U.S. Probation, rather than to the government, the government maintains that the request is not supported by good cause.  Gabrion does not specifically identify the claim(s) to which this request relates; assuming it relates to Claim 4C, alleging ineffective assistance of counsel for failing to secure records for the penalty phase, and/or Claim 4L, relating specifically to his SSI benefits, those claims fail as matter of law and do not warrant further factual development for the reasons set forth in the government's responses to those claims, see ECF No. 44, at ID#2320, 2343.

24.     **All documents and things relating to the potential testimony of the late Walter Hamilton.**  This request purports to relate to Gabrion's claim 3U, but that claim lacks legal merit for the reasons set forth in the government's response to that claim, see ECF No. 44, at ID#2304.  As set forth therein, Linda Coleman acknowledged at trial that she had talked to Hamilton about seeing a strange man in the neighborhood, but admitted she did not tell him about seeing Gabrion and Timmerman at Oxford Lake.  This claim, even if further factually developed, would not give this Court reason to believe that habeas relief is warranted. Accordingly, it is unsupported by good cause.

10

Respectfully submitted,

Dated: March 18, 2016

PATRICK A. MILES, JR.
United States Attorney

/s/ Jennifer L. McManus

ANN M. CARROLL
Trial Attorney
U.S. Department of Justice
Capital Case Section
1331 F. St. NW Room 609
Washington, DC
(202) 616-4439

TIMOTHY P. VERHEY
JENNIFER L. McMANUS
SALLY J. BERENS
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404

11