**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARVIN CHARLES GABRION, II,         )
                                    )
            Movant,                 )
                                    )
    v.                              ) 1:15-CV-447
                                    )  HON. ROBERT HOLMES BELL
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

**MEMORANDUM IN SUPPORT OF MOTION TO RECUSE**

A.      Status of the Case

In 2002, movant was convicted of murder and sentenced to death following a jury trial in this court. Following lengthy appellate proceedings that affirmed movant's conviction and sentence, movant filed a petition under 28 USC § 2255 challenging his conviction and sentence. (Dkt. #1). Movant has recently requested leave to amend the § 2255 petition, attaching the proposed amended petition.  The request for leave to amend is pending.

Additionally, movant filed a request for discovery.  Following a hearing, the court ruled that it would not grant movant's request for discovery at that time because a ruling on movant's discovery request was necessarily intertwined with movant's allegations in the § 2255 motion.  Rather, the court indicated it would rule on the requested discovery as it ruled on the merits of the § 2255 motion.  Thus, movant's request for discovery essentially remains under advisement.

1

At this point, there are several matters pending before this court.  They include, movant's original § 2255 motion, his request for leave to amend said motion and the amended motion, requests for discovery, and a request for an evidentiary hearing.

B.    Extrajudicial Comments Made to the Media

On Friday, December 16, undersigned counsel became aware of interviews the court conducted with local media in Grand Rapids. The web page for WOOD-TV, channel 8, contains a written article that was posted on December 16, 2016 and two separate video clips that appear to have been aired that same day.  See, http://woodtv.com/2016/12/16/retiring-judge-doubts-marvin-gabrion-will-be-put-to-death/ (last visited December 16, 2016).  The video segment interviews with the court appear to have been filmed at the same time and split into two separate segments for airing on different news casts on December 16th.  The written piece appears to be a synopsis of the video clips.

The event that spawned this media attention is the imminent retirement of this court after thirty years of service on the bench.  The piece was largely about the court's service.  Movant is said to be the first man sentenced to death in Michigan in 65 years and in spite of the fact that Michigan has outlawed the death penalty.  Movant's case is referenced as the court's "most high profile case" in his thirty-year career on the bench.

In the interview, the court was asked if he considered movant "evil" as compared to all the defendants he has had in his courtroom over the last thirty years.  The court responded: "Yes.  You said it and I agreed with you."

Continuing the "evil" theme, the court described movant's eyes as "evil".  The court also claimed that movant "had tried that on me.  I just looked right back at him,

2

and then I said, on the record, 'The record should reflect Mr. Gabrion is staring at me and has stared at me for the last two hours, and it's having no effect whatever upon me.'"

The court also informed the WOOD-TV viewers about an incident involving movant and his female counsel.  The court explained to viewers that movant had "recently" assaulted his female counsel in the visitors' room before either of them even sat down.  According to the court, movant's counsel had to be "rescued" by nearby prison guards.  This event did not occur in the court's presence, is not a matter of record in this court, and did not occur recently.

The court also speculated on whether movant would ultimately be put to death, suggesting the court would not put the chances at better than 50/50.  The court reflected that when he was assigned movant's case, he told his wife "that this guy [movant] and I are going to be synonymous for months and years to come, and it's true."

The WOOD-TV article also linked to an article in the Grand Rapids Press.  On or about November 20, 2016, the court apparently gave an interview to John Agar of the Grand Rapids Press and MLive. In referring to movant, the court said "he's in the right place."  Movant was then and is currently on federal death row in Terre Haute, Indiana.

C.    The Extrajudicial Comments Require Recusal

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might be questioned."  28 USC § 455(a).  The fair trial guarantees of the Due Process Clause of the Fifth Amendment encompass a litigant's right to have a "neutral and detached judge" preside over judicial

3

proceedings.  <u>Ward v. Village of Monroe</u>, 409 U.S. 57, 62 (1972); <u>In re Murchison</u>, 349 U.S. 133 (1959).  The denial of this constitutional guarantee is not subject to harmless error analysis.  <u>Tumey v. Ohio</u>, 273 U.S. 510 (1927); <u>Bracy v. Schomig</u>, 286 F.3d 406, 414 (7th Cir. 2002).

The standard under § 455 (a) is objective.  <u>Roberts v. Bailar</u>, 625 F.2d 125,129 (6th Cir. 1980).  "If there is a reasonable factual basis for doubting the judge's impartiality, the . . . judge should disqualify himself and let another judge preside over the case.  Even where the question is close, the judge whose impartiality might reasonably be questioned must recuse himself from the trial."  <u>Id.</u> [citations omitted].  The actual impartiality of the judge is not controlling.  <u>Id.</u>  Rather, it is the appearance of impartiality that controls because "justice must satisfy the appearance of justice."  <u>Id.</u> at 130, quoting, <u>Offutt v. United States</u>, 348 U.S. 11, 14 (1954).

Various Canons of the Judicial Code for United States Judges are implicated by the court's comments here.  Canon 3A(6) prohibits the court from making "public comment on the merits of a matter pending or impending in any court."   Canon 2A of the Judicial Code that states that "A judge should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

This court's comments, given voluntarily to the media about a matter pending before the court, raise good faith questions regarding this court's impartiality in movant's case.   In <u>United States v. Cooley</u>, 1 F.3d 985 (10th Cir. 1993) the Tenth Circuit reversed the district court's refusal to disqualify where the defendants were abortion protesters and the trial judge had appeared on television and stated "these people are breaking the law."  This statement required recusal because it "unmistakenly conveyed an

4

uncommon interest and degree of personal involvement in the subject matter." Id. at 995.  First, the statement itself demonstrated the court's resolve to see his order prohibiting certain actions enforced.  Second, the judge's decision to "appear in [the news] at such a sensitive time to deliver strong views on matters which were likely to be ongoing before him." Id.   The court noted it was "an unusual thing for a judge to do, and it unavoidably created the appearance that the judge had become an active participant, in bringing law and order to bear on the protesters, rather than remaining as a detached adjudicator." Id.

In a footnote the Tenth Circuit cited Canon 3A(6)'s requirement that the court abstain from public comment. Id., at 995, n. 8.  Although the court declined to expressly hold that the trial court had violated that Canon it did note that the "goal sought to be served by the Canon informs our analysis."   The Tenth Circuit went on to hold that "a reasonable person would harbor a justified doubt as to [the trial court's] impartiality in the case involving these defendants." Id.

Similarly, in In re Boston's Children First, 244 F.3d 164 (1st Cir. 2001), the First Circuit held that a judge's comments required disqualification.  Press accounts had unfavorably compared her actions in the pending case with a prior case.  The trial court told a reporter that the pending case was "more complex" than another which in the milieu of the legal issues before the court arguably suggested petitioner's claims for certification of a class and for a preliminary injunction were less than meritorious.  The First Circuit ultimately held that disqualification was necessary.  It found that media contact "less inflammatory than that in Cooley" but it saw "the same factors at work." Id. at 169.  Because judges rarely make public statements and because they are easily

5

avoided, it is more likely that a reasonable person will interpret even ambiguous statements as evidence of bias.  Id. at 170.  There was also a concern about the judge defending her own orders would create an appearance of partiality.

In United States v. Microsoft, 253 F.3d. 34 (D.C. Circuit 2001), the trial judge gave a series of secret interviews before and during the trial which were released after trial.  The D.C. Circuit noted that Canon 3A(6) is straightforward and easily understood. It found that the trial court breached its duty under 3A(6) each time he spoke to a reporter about the merits of the case.   The D.C. Circuit noted that other "federal judges had been disqualified for making limited public comments about cases pending before them", citing, In re Boston's Children First, supra, and United States v. Cooley, supra.

While noting that not every violation of Canon 3A(6) creates the appearance of impartiality that violates 28 USC 455(a), it found that the remarks in this case did.   In finding that these remarks did cross the line the D.C. Circuit held that "the problem here is not just what the District Court said, but to whom he said it and when. . . It is an altogether different matter when statements are made outside the courtroom, in private meetings unknown to the parties, in anticipation that ultimately the Judge's remarks would be reported.  Rather than manifesting neutrality and impartiality, the reports of the interviews with the District Court convey the impression of a judge posturing for posterity, trying to please the reporters with colorful analogies and observations bound to wind up in the stories they write." Id. at 116.

A reasonable person possessed of all the facts would conclude this court's impartiality might reasonably be questioned.  First, the court discussed the merits of this

case despite a judicial canon clearly prohibiting such conduct. [1]  "Judges are usually loath to discuss pending proceedings with the media . . . ."  In Re Boston's Children First, supra, 244 F.3d at 169.  The court's personal involvement in the subject matter, found so problematic in Cooley, is demonstrated by the court's statement about his name being linked with movant's into the future. The court abandoned its position as a detached adjudicator and weighed in as a dispenser of news when he reported the story of movant allegedly assaulting his counsel recently.

The court's representation that movant is the most "evil" person the court has encountered in thirty years on the bench is a comment on the merits of the case because currently pending before the court are numerous claims that movant is severely mentally ill, and thus, not evil, including that counsel was ineffective in the manner they presented the mental health evidence (Ground 4 of the § 2255 petition), that movant was incompetent to proceed to trial (Ground 5 of the § 2255 petition) and that movant's severe mental health problems prevent his execution (Ground 11 of the § 2255 petition).   The government claimed at trial movant was evil and had to be executed based upon its contention that he manipulated the CSC case to prevent Ms. Timmerman's testimony and then when he could no longer prevent her testimony, he killed her.  This theory has been largely debunked and is also before the court (Ground

---

[1] In United States v. Microsoft, supra, 253 F.3d at 210, the court observed:  "While some of the Code's Canons frequently generate questions about their application, others are straightforward and easily understood.  Canon 3(A)(6) is an example of the latter."  The only exceptions to this straightforward prohibition are public statements made in the course of the judge's official duties, explanations of court procedures, and scholarly presentations made for the purposes of legal education.  See Canon 3A(6). The comments here meet none of these exceptions.

1 of the § 2255 petition).  The comments that movant is where he should be is a statement on the merits of the petition as a whole.

      D.      <u>The Law Requires Heightened Reliability in Death Penalty Cases</u>

Death penalty cases are significantly different from ordinary felony cases because of the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures.  <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305 (1976); see also, <u>Gardner v. Florida</u>, 430 U.S. 349, 357-58 (1977) ("From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action.  It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.").

The judge's role under federal law literally gives the power of life and death. Recusal issues are treated differently in capital cases.  See, e.g., <u>Bracy v. Schomig</u>, 286 F.3d 406, 418 (7th Cir. 2002) ("In evaluating [the trial judge's] rulings at the penalty phase of this proceeding, we are again mindful that death is indeed different.").  It is also suggested, review of a federal death sentence requires heightened scrutiny because § 2255 proceedings are the only place a federally prosecuted capital defendant is afforded extra-record review of his death sentence.[2]

---

[2] Conversely, a defendant tried and sentenced to death in state court is afforded state post-conviction review, as well as, federal review under 28 U.S.C. § 2254.

E.    Conclusion

This is a case which requires heightened reliability in its fact-finding proceedings. The public must be assured that when its government takes a life it has afforded the condemned offender all the due process and fairness the law requires.  Because a reasonably person possessed of all the facts would conclude the court's impartiality might reasonably be questioned, the court must step aside and allow another jurist to hear this case.

Respectfully submitted,

By: /s/ *Monica Foster*
    Monica Foster
    Attorney for Movant
Business Address:
Indiana Federal Community Defenders, Inc.`
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520

By: /s/ *Joseph M. Cleary*
    Joseph M. Cleary
    Attorney for Movant
Business Address:
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520

By: /s/ *Scott Graham*
    Scott Graham
    Attorney for Movant
Business Address:
SCOTT GRAHAM PLLC
1911 West Centre Avenue, Suite C
Portage, MI 49024
(269) 327-0585

Dated:  December 22, 2016