UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - -

MARVIN CHARLES GABRION, II,

               Movant,

      vs.

UNITED STATES OF AMERICA,

               Respondent.

_____/

No. 1:15-cv-447
(Criminal Case 1:99-CR-76)

Hon. Robert J. Jonker
Chief U.S. District Judge

**DECLARATION OF CHRISTOPHER P. YATES**

Pursuant to 28 U.S.C. § 1746, I submit the following declaration in connection with the

pending motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence filed by

Marvin Gabrion in this matter.  I have read the portions of Mr. Gabrion's amended motion that

make allegations related to me.  In reference to the motion's allegations, I state as follows:

1.      In June of 1997, I joined the Federal Public Defender's Office for the Western

District of Michigan, and on September 18, 1998, I became the Federal Public Defender for the

Western District of Michigan.  I served in that capacity until March of 2004.  I am currently a

17th Circuit Court Judge in Grand Rapids, Michigan.

2.      In 1998, Mr. Gabrion was convicted of social security fraud.  I represented Mr.

Gabrion in connection with the appeal of that conviction.  I argued that case before the United

States Court of Appeals for the Sixth Circuit on March 10, 2000.

3.      On July 7, 1997, I was appointed to represent Joseph Lunsford, who was charged

with mailing threatening communications to the President.



GOVERNMENT
EXHIBIT

J

1:15-cv-447

4.    On March 30, 1998, Mr. Lunsford gave a proffer about information pertaining to Mr. Gabrion.  I represented Mr. Lunsford in connection with that proffer.  On May 6, 1999, I was present outside the grand jury room when Mr. Lunsford testified before the grand jury about that information.

5.    I never represented Mr. Gabrion in connection with his murder case.  Everyone, including Judge Bell, Mr. Gabrion, and his attorneys, Mr. Stebbins and Mr. Mitchell, was aware that I had a potential conflict due to my representation of Mr. Lunsford, and therefore I was not going to represent Mr. Gabrion in the murder case.  Although I spoke to Paul Mitchell and David Stebbins generally about the case in my role as Federal Defender, I was not present at defense strategy meetings, and I never appeared on Mr. Gabrion's behalf in court.

6.    In my role as Federal Defender, Judge Bell asked me to review and provide input into the defense fee and expense requests.  As reflected in Exhibit 2.6, Judge Bell also asked me, in my role as Federal Defender, to assist as a conduit between Mr. Gabrion and his attorneys in an effort to facilitate communication and assuage any concerns Mr. Gabrion had arising from his relationship with his attorneys.

7.    Because I had developed a good relationship with Mr. Gabrion as part of my representation of him during his social security appeal, I continued to visit with him from time to time.  While his murder case was on appeal, I also went to visit him when he was being held in Terre Haute, Indiana, at the request of Kevin McNally from the Federal Death Penalty Resource Counsel Project because Mr. Gabrion was not cooperating with his attorneys, and I was asked to encourage him to assist his attorneys.  However, my interactions with him centered around his practical issues, rather than legal advice.  For example, at Mr. Gabrion's request, I advocated to move him to the federal prison in Milan, Michigan.

8.     I have reviewed Movant's Exhibit 2.5, a letter David Stebbins sent me on April 6, 2001. In my role as Federal Defender, I provided research assistance to Mr. Gabrion's lawyers, as I regularly did for Criminal Justice Act ("CJA") panel attorneys. I did not direct any strategy or sign any pleading in the murder case. I simply conducted legal research regarding the theory of federal jurisdiction over Mr. Gabrion based upon the location of his alleged crime.

9.     I have reviewed Movant's Exhibit 7, an affidavit from Joseph Lunsford. The allegations pertaining to me in paragraphs 6 through 8 are completely false. I never directed or even suggested how Mr. Lunsford should testify against Mr. Gabrion. I simply facilitated the contact between Mr. Lunsford and the federal agents and prosecutors who considered calling Mr. Lunsford as a witness against Mr. Gabrion. I never told Mr. Lunsford to lie to anyone. To the contrary, I made clear to Mr. Lunsford – as I always did to every one of my cooperating clients – that his ability to obtain any benefit from his proffer statements and testimony depended upon his truthfulness.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Dated: April 27, 2017

Christopher P. Yates