
Case 1:15-cv-00447-RJJ    ECF No. 119-3,  PageID.5300    Filed 05/22/17    Page 1 of 5

# the CHAMPION

OFFICIAL JOURNAL OF THE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS

**APRIL 1988**

**VOL. XII, NO. 3**

GOVERNMENT EXHIBIT

**L**

1:15-cv-447

## NACDL Spring Seminar and Board Meeting

**May 6-7, 1988
Austin, Texas**

# CAPITAL CASES

# Psychologists and Mitigation: Diagnosis to Explanation

## by David C. Stebbins

In the first phase of the trial, the prosecutor must prove the case for guilt; the prosecutor must prove that the crime was committed and that the defendant before the bar committed the crime. At the penalty phase of a capital case, defense counsel is faced with the task of proving the case for life; the defense attorney has the even more difficult task of proving that life is the more appropriate sentence, despite the gruesome facts of the crime. Just as a prosecutor would not consider investigating and proving the case without the assistance of experts, the defense attorney also should not consider investigating and proving the case for life without the assistance of experts.[1] One of the most important experts that defense counsel should make part of the defense team from the outset is a clinical psychologist with experience and expertise in both forensic and developmental psychology.

## What is Mitigation?

The theories of mitigation and how to approach it have been more fully addressed in earlier articles. For the purposes of this article, *mitigation* is an explanation of the life of the defendant and an explanation of how the crime occurred. The general public (and, therefore, jurors) and the courts are most afraid of things they do not understand. "Senseless" murders scare them more than anything, because they can happen to anyone. In mitigation, the goal of the defense team is to explain the crime to the jury and the courts. Unless one accepts the theory of inherent evil, there is an explanation for every crime. Contrary to the

theories often propounded by prosecutors, the "typical" defendant has not spent his entire life plotting to commit this one murder or murders. Influences beyond the control of the defendant, impacting on his ability to control himself, have been working on him since he was born and even before. It is this collection of data on these influences and an explanation of how these added up to develop the psychological makeup of the individual that is the process of mitigation. Understanding the psychological makeup of the client is critical to understanding how the crime occurred. If the defense team does not understand the life of the defendant, it will never be able to explain the how and why of the crime to the jury or the court. This is where the clinical psychologist plays a pivotal role on the defense team.

## The Defense Team

Previous articles have discussed the basic theories of mitigation and the need to put together a team for defending a client facing the death penalty. For purposes of the penalty phase, the team needs to include both a mitigation specialist/social investigator and a clinical psychologist. Each performs different roles and has different expertise to offer to the team. The penalty phase of a capital case is not prepared and presented in a vacuum; it must be coordinated with the guilt phase of the trial and

all pretrial proceedings. The team must work on the whole trial and have a unified approach to the litigation. While the remarks here will be primarily addressed to the penalty phase, they apply in reality to the entire process of preparing for and presenting the case.

The attorney(s) on the team are ultimately responsible for all of the decisions made about the case. The attorneys, however, should not be making these decisions blind. Attorneys are seldom trained as either social workers or psychologists. Even where they are, there is far too much legal work to be dealt with in a capital case for the attorney alone to attempt to handle all phases of case preparation and presentation. This would be the same as a prosecuting attorney investigating and presenting the state's case alone, while requiring the prosecutor to do his/her own investigation of the case, conduct the autopsy and all of the forensic testing that is required to prove the case for guilt. The prosecutor has to prove the case for guilt. The defense has to prove the case for life. The tools needed are as important for the defense attorney for presenting the case for life as for the prosecutor for presenting the case for guilt.

### Early Involvement

Just as presenting evidence on each element of the crime and the identification of the defendant as the perpetrator is the essence of the prosecutor's case, presenting psychological evidence to explain the life of the defendant and explaining how and why he was in a situation where he could kill another human being is the essence of the defense attorney's case in mitigation. The psychologist needs to be made part of the team from the very beginning—just as the various law enforcement personnel are part of the prosecutor's team from the very beginning. The psychologist is not there

1. This article was written with the technical assistance, advice, and counseling of Nancy Schmidt-goessling, Ph.D., a clinical psychologist from Cincinnati, Ohio; Susan Shorr, Ph.D., a mitigation specialist from Cleveland, Ohio; and Jane Core, a mitigation specialist with the Ohio Public Defender's Office in Columbus, Ohio. The author acknowledges and appreciates their assistance, not only with this article, but in developing the theories and practices the article espouses.

*CHAMPION contributor David Stebbins is Chief Death Penalty Counsel with the Ohio Public Defender Commission.*

## Capital Cases

to present "mitigation" to the attorneys on a silver platter. The psychologist needs to be part of the team that develops a cohesive and sympathetic theory from the data collected about the defendant's life and the results of his or her psychological testing.

The psychologist can also help the entire

---

Mitigation *is an explanation of the life of the defendant and an explanation of how the crime occurred.*

---

team understand the client and can advise the team on how to approach mitigation, and, perhaps more importantly, advise the team on how to deal with the client and his family during the pretrial preparations. If a psychologist is not brought in until just before trial or until the defendant has already been found guilty, the client may be so depressed that virtually all psychological testing will be rendered invalid. If the client has not been worked with pre-trial, it is likely that by the time he is convicted of capital murder, he will have built such a wall around himself that it will be impossible for anyone to get through to him in such a limited amount of time. The client is also likely to be too distrusting of anyone at that point to even cooperate with the psychologist. By bringing the psychologist into the team at an early date, problems with the client can be more readily addressed and ways of developing rapport can be suggested to develop a useful and productive working relationship, rather than the adversarial type of relationship that often develops out of lack of communication between the client and the team.

Another advantage to the early involvement of a psychologist is that it gives the psychologist multiple opportunities to work with the client and discover all of the psychological difficulties he may have. While one or two interviews may be adequate to determine if any recognizable and serious mental disease or defect exists, the discovery of the more subtle problems that surround personality disorders may take numerous contacts. The psychologist may also discover that it is important to meet with members of the client's family to see how their psychological makeup may have contributed to the psychological difficulties. If the psychologist is not brought in until after the defendant is found guilty, there will never be enough time to do this kind of thorough examination of the client and his family.

Still another advantage of early involvement of the psychologist is that the attorneys and social investigators will be better able to change directions and pursue alternative leads and alternative theories of mitigation. The results of tests or interviews may indicate to the psychologist some different avenue of investigation for physical or emotional trama or relationship. More importantly, the psychological testing may indicate some line of defense for the guilt phase of the case. Ideally, if a psychologist is brought in at the very beginning, the initial testing of the client should indicate whether it is worthwhile to pursue an insanity defense, raise the issue of competency, or pursue some theory of diminished capacity. The psychological evaluation may also indicate the immediate "stressors" that were operating on the defendant at the time of the crime, which generally will be essential to an understanding of why the crime took place. The guidance the psychologist can give to the social investigators in following up different avenues in the defendant's history is invaluable.

Prior to actually testifying at the penalty phase of a capital trial, a psychologist will have explored virtually all areas of development and explanation with other members of the defense team. Often the social history and the psychological examinations will reveal other areas of expertise that are beyond those of the psychologist. If testing and the history reveal that there is evidence of a serious and identifiable mental illness, it may be appropriate to bring in a psychiatrist to further evaluate the defendant and explain the mental illness and its effect on the defendant's ability to distinguish right from wrong or to have refrained from committing the act at the time. If the examinations and history show some indication of head trauma or organic brain damage from any source, a neuropsychologist or a neurologist may be suggested for further evaluation as to the possibility of brain damage. If mental retardation is apparent, specialists in explaining the effects of mental retardation may be needed for evaluation and testimony.

The psychologist may also be able to detect indications of more subtle problems that may require the expertise of additional experts to explain the effects these problems may have on a person's psychological makeup and ability to deal with the immediate stressors of the situation they found themselves in. Some of these areas include Post-Traumatic Stress Syndrome, the effect of being homeless and living on the street, the long-term effects of drug and/or alcohol abuse, and the inability of victims of child sexual abuse to fabricate stories about the abuse, even as adults. Many of these fields of expertise may not be recognizable by a lay person, a defense attorney, or even a social worker trained in the specialty of preparing mitigation (although they are much more likely to recognize these problems than someone not trained in these fields). However, a psychologist is trained specifically to look for these types of problems and is also likely to realize when additional expertise is needed. Defense counsel should never be

---

*Defense counsel should never be willing to rely wholly on the psychologist alone.*

---

willing to rely wholly on the expertise, assistance, and testimony of a psychologist alone. While in a given case this may be sufficient, many cases indicate that additional testing and examination by other experts is necessary to fully discover how and why the person functions.

Where additional expertise is needed either for testing or for testimony, it should be sought. The team psychologist is the one who is most likely to recognize the need and to have the contacts with other mental health professionals to find the most appropriate experts to assist. The defense team can be directed to areas of expertise and experts that may well have escaped their studies and imagination. The psychol-

ogist brings an expertise and a field of knowledge that is not present in the other members of the team. Just as the prosecutor will not pass up any field of expertise in his efforts to prove the case for guilt, the defense should not pass up the single most important area of expertise in explaining the life of the client and the crime in terms that will be sympathetic to the jury.

## The Social History

In the ordinary criminal case, psychologists and psychiatrists often testify to their opinions on sanity and/or competency to stand trial. Often these opinions are based on very little hard data or information. A prosecutor's traditional questions for cross-examination include: "...and you got all of this information from the defendant, didn't you?" "...and why do you think he is telling the truth since he lied to the police and everyone else about the facts of the crime?" A social history developed by the defense team helps the psychologist avoid attacks such as this on credibility by giving additional corroborating data to support testimony. A complete social history of the defendant also reveals any past history of psychological disorders, head injuries, emotional traumas, and other significant life events—all of which should assist the team in developing an explanation to present to the jury.

A complete social history consists of a life history that explores in detail *every event of any significance* in the client's life and every relationship that the client has had with virtually anyone throughout his life. This information is often difficult to obtain because of the passage of time, the concomitant lapses of memory, and the often sensitive nature of the information sought. Social workers/social investigators are trained in this type of investigation, in probing into the depths of people's minds for past information and often painful memories. An astonishing number of people in these situations have experienced childhoods that are, at best, bizarre. Physical, mental, and sexual abuse are often rampant. Neglect, either physical or emotional, is common. Failure of the parents to instill any value system is typical. The parents introducing the children to crime is also fairly common. These are not things that people are eager to talk about, even

when the life of their son or daughter is on the line. Ordinarily, even the client will be unwilling or unable to talk about many of these things. It takes a great deal of skill and training to be able to elicit this type of sensitive information. It takes additional

---

*Initial testing of the client should indicate whether it is worthwhile to pursue an insanity defense, raise the issue of competency, or pursue some theory of diminished capacity.*

---

skill to be able to recognize that these things were going on when no one will admit to them. Often the types of abuse and neglect have to be discovered and proven through extrinsic sources, *i.e.*, social agencies, neighbors, teachers, friends, or relatives who were close to the family but have less reason to protect them.

Very often these types of abuse and neglect are extremely subtle. There may be no marks or broken bones or evidence of sexual abuse—but this does not mean that abuse or neglect has not occurred. Lack of emotion and support can be as devastating on the development of a child's psychological makeup as actual physical abuse. Often these problems are not overt, but are the result of the makeup of the family. Siblings may have as much influence on a child's development and psychological makeup as the parents. Only by investigating every aspect of the client's life history can these subtle influences be detected. The team cannot hope to understand and explain the client and the crime without this type of a history. The psychologist—who is most likely to be doing the explaining from the stand—is much better prepared to develop that explanation if he or she is not only provided with a social history but has also helped direct its preparation.

During the preparation of the social history, the social investigators will try to uncover and collect virtually every record from every type of institution with which the client has had contact. These will in-

clude medical and psychological records as well as records from every social agency, juvenile institution, and prison with which the client has been in touch. Many of these institutions have extensive records and have conducted intensive tests on the client. These will often reveal a history of medical or psychological problems that are extremely helpful to a psychologist's present evaluation of the client and his or her explanation of the client and the crime. The results of past psychological testing can be relevant to showing deterioration of psychological conditions, deterioration of I.Q., and other developing problems, as well as support the present diagnosis. A client who was diagnosed as a developing schizophrenic at the age of 16 is not likely to be faking paranoid schizophrenia at the age of 32. A psychologist armed with all of the records of the client's history is much better equipped to present a sympathetic and truthful explanation of the client's psychological makeup and of how the crime occurred.

## The Role of The Psychologist

The one constant that has flowed through Eighth Amendment jurisprudence since *Furman* is that every death eligible defendant is entitled to an individualized determination of his sentence. Virtually all death penalty defense literature has suggested that it is virtually mandatory to humanize and personalize the client to have any hope of winning a life sentence. Clearly, this goes beyond showing the client as a human being. It must include showing what *kind* of a human being the client is and how he or she got to be that way. This is where a psychologist fits into the team, especially when it comes to presenting evidence at trial. The explanation of the life and the crime in psychological terms can be "textbook dry," and usually is. When properly prepared and involved in the process of mitigation, however, the psychologist can present the human side of the client and all of the human factors that have gone into making him the type of human that he is. Without this, the jury is left with the impression that this is a human being who is distinctly different from them, because they "do not go around killing people"; however, their natural reaction to being shown that someone is human—but so different—is to kill him *because* he is

## Capital Cases

different. Only by presenting testimony that is particularized to this defendant can the jury understand why this person is the way he is and understand that the killing that took place was a situational killing resulting from a combination of psychological dysfunctions, ongoing stresses, situational stresses, and possibly mental disease or "organicity." Presenting this information can show that this could not happen again unless the exact same circumstances are present (which is highly unlikely to occur, especially if this defendant is spending the rest of his life in prison).

The more individualized information any witness can give about a defendant, the more sympathetic a jury is going to be towards his story. Typical psychological testimony on sanity, competency, or diminished capacity sounds like it comes out of a textbook. Despite the best efforts of the mental health professional and the attorneys, most of this type of testimony is incomprehensible to a lay juror. There is also an unfortunate tendency to get caught up in technical terms that bore the jurors and do nothing to humanize the client. It makes little sense to spend several days putting on the testimony of relatives and friends of the defendant about the human characteristics of the defendant, and then put on a psychologist or psychiatrist who immediately turns this around by making this person sound like a casebook

---

*Testimony about the psycho-social development of the defendant explains the psychological diagnosis in human terms that the jurors can understand.*

---

study out of some obscure and arcane psychology textbook. And because the vast majority of capital defendants may not have a serious recognizable mental disease or defect, the testimony of the mental health professional is easily attacked by the prosecution. This can do considerably more harm than good.

Testimony about the psycho-social de-

velopment of the defendant explains the psychological diagnosis in human terms that the jurors can understand. The average juror can understand why environmental factors have different effects on people with different psychological makeups. One of the common complaints of jurors when faced with testimony of a "bad childhood" is to react by saying, "I had a bad childhood too, and I do not go around killing people"; or "His sister/brother grew up in the same environment and look at her/him. S/he is successful and does not go around killing people. Why should I have any sympathy for this one?" An explanation from a developmental point of view can show why superficially identical environmental factors caused entirely different results in siblings or other people. This viewpoint from a developmental explanation also helps the *team* figure out the answer to the same question: Why is this guy different from the rest of the family? This same explanation can give reasons why this particular person with this particular background and psychological makeup reacted so differently and so violently to the particular immediate stressors that touched off the killing that is at issue.

Jurors, the general public, and those involved in the criminal justice system find it hard to understand why people react to situations the way that capital defendants do. What may seem to be rather mild stressors or rather mild negative stimuli often serve to trigger unexplainable, violent reactions that result in the death of another human being. The question that always needs to be addressed is not: "How would I have reacted in this situation?", but rather: "Why did this defendant react in the way he did, given the same situation and the same stressors? Why is this person so different?" Explaining what has gone into this person's development to make him react this way, and what has gone into this person's development that allowed him to get in a situation in which the taking of another life was an option, let alone the most viable option, will often be the key to mitigating the death sentence. The general public does not get into those situations and often thinks that the defendant deserves whatever he gets just because he put himself in such a situation. But the key that can often be answered through developmental terms is explaining why he was living such a life in the first place and

why the reaction was as severe and violent as it was.

A common reaction to this information is to vote for death simply because this person is so different and has problems that cannot be cured. The psychological explanation, however, needs to show that this

---

*The psychologist needs to be made part of the team from the very beginning.*

---

is essentially a one-time occurrence, and that the same factors will never come together again, especially in the controlled environment of prison. It is important to keep in mind that when the explanation becomes an issue, the defendant has already been found guilty of capital murder and is facing life in prison if he is not executed. This person will not be out on the streets again with no control and with the influences of drugs and alcohol and the frustrations of unemployment, poverty, failure, and knowing no other lifestyle than one of crime and violence. Additionally, the psychologist can offer testimony regarding the positive effects of structure on the client; *i.e.*, that he has and will perform well in the confines of prison.

### Conclusion

While this is a somewhat simplistic overview of the art of mitigation, the idea of having a trained forensic psychologist as part of the defense team cannot be emphasized too extensively. Mitigation should be an explanation of the crime. Who better to explain the thoughts and feelings of the defendant than a psychologist trained in these matters? Not only can the psychologist assist the team in identifying a theory of mitigation, but can also suggest other areas where futher expertise may be used. Most importantly, the psychologist can present the explanation to the jury in such a way that the jury can understand the life of the defendant and understand why the crime took place. A jury that understands what happened is more likely to be sympathetic and understand the ancient concept of mercy.  ◗