**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MARVIN CHARLES GABRION II,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Movant,　　　　　　　) 1:15-CV-447
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　) HON. ROBERT J. JONKER
UNITED STATES OF AMERICA,　　　　　) CHIEF U.S. DISTRICT JUDGE
　　　　　　　　　　　　　　　　　　)
　　　　　　　Respondent.　　　　　　)

---

**MARVIN GABRION'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION
FOR A HEARING TO DETERMINE MENTAL COMPETENCE**

---

Movant, Marvin Charles Gabrion II, through counsel, replies to the government's response to his motion for a hearing to determine mental competence. In that motion, counsel for Mr. Gabrion proffered that he is currently unable to assist them in any meaningful way, including developing the extra-record evidence that is foundational to §2255 litigation. Counsel noted that, despite serious questions about Mr. Gabrion's mental health, no court has ever conducted a competency hearing. The government's response argues that there is no right to competency during federal habeas proceedings and that – even if there were – Mr. Gabrion is just a malingerer. The first point is legal error and the second should be subject to adversarial testing, which requires discovery and further investigation.

**I.    The Court must assess Mr. Gabrion's competency and the potential for restoration, because his § 2255 motion requires development of the record, and therefore his participation.**

As noted in Mr. Gabrion's motion and supporting authority for an extension of time in which to file this reply, in *Ryan v. Gonzales*, -- U.S. --, 133 S. Ct. 696 (2013), the Supreme Court recognized a district court's authority to grant a stay when an incompetent

defendant's assistance is required during habeas proceedings and there is a likelihood that competency can be restored. *Gonzales*, 133 S. Ct. at 708.  The Court also implicitly recognized that the necessity for a stay would be more likely in proceedings like this one, under 28 U.S.C. § 2255.

*Gonzales* involved state court convictions being reviewed in federal court under 28 U.S.C. § 2254.  Section 2254 proceedings are the second round of post-conviction proceedings for those tried and sentenced in state court.  As a result, the proceedings are largely record-based, and review is deferential.  *See* 18 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  In contrast, in § 2255 proceedings, courts exercise independent judgment on issues that have not been raised previously, often following presentation of new evidence.  *See* 28 U.S.C. § 2255(b).  *Cf.  United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998) (differentiating federal direct appeal and § 2255 proceedings).

The Court noted in *Gonzales* that it was addressing the "outer limits" of district court discretion to issue a stay based on the petitioner's competency.  133 S. Ct. at 708.  The limits it set were grounded in the distinction between § 2254 and § 2255, and demonstrate Mr. Gabrion's entitlement to consideration of a stay.  The Court observed that, "[g]iven the backward-looking, record-based nature of most federal habeas proceedings, counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence."  133 S. Ct. at 704.  *See also id.* at 705 ("Attorneys are quite capable of reviewing the state-court record, identifying legal errors, and marshaling relevant arguments, even without their clients' assistance.").  In the case of Petitioner Gonzales, the Court held that, because no extra-record evidence would be admissible, a stay was not warranted.  In the case of Petitioner Carter, the Court granted a limited remand for determination whether one claim warranted further development, requiring a temporary

2

stay (and evaluation whether the petitioner might regain competence).  *See* 133 S. Ct. at 709.

Mr. Gabrion's case is akin to Carter's, except that most of Mr. Gabrion's claims require development, not just one.  In particular, Mr. Gabrion's assistance is required in investigating his family and social history, his counsel's ineffective assistance at trial and on appeal, and the facts surrounding his capital conviction and alleged prior bad acts.  The ethical rules require that counsel representing an impaired client endeavor, insofar as possible, to maintain a normal working relationship with the client as long as possible, and then take protective action.  *See* ABA, Model Rule of Professional Conduct 1.14 (Client with Diminished Capacity).  In filing the motion for a competency hearing, counsel have taken such action.  Should the Court conclude that Mr. Gabrion is incompetent, *Gonzales* grants it the authority to issue a temporary stay for restoration of competency, before proceeding further.[1]

Counsel are not aware of a § 2255 matter in which the specific question of the right to competency has been litigated; however, other courts have recognized the necessity of full competency litigation – consistent with *Gonzales* – even in § 2254 cases in which the claims are not solely record-based.  *See, e.g., Connor v. Secretary, Fla. Dept. Corrections*, 713 F.3d 609, 624 (11th Cir. 2013); *Lafferty v. Bigelow*, 2014 WL 104038, at *3 (D. Utah Jan. 9, 2014); *Huggins v. Chappell*, 2013 WL 843296, at *2 (N.D. Cal. Mar. 6, 2013).

This is because competent death-row prisoners can – and have – played a critical role in habeas actions, in assuring both the procedural fairness and factual accuracy of the proceedings.  The Supreme Court's decision in *Gonzales* accepts this, holding that a stay is warranted for incompetence if "the petitioner's claim may substantially benefit from the

---

[1] Counsel note that the record contains evidence of Mr. Gabrion's responsiveness to medication.  *See* Pine Rest Christian Hospital Records dated June 15, 1993, and August 3, 1993 (Exhibit 1).

petitioner's assistance".  133 S. Ct. at 709.  Although litigation benefits in many ways from a client's participation, at this stage, Mr. Gabrion's assistance is needed most to aid in investigation.

As the Supreme Court has noted, the course of an investigation "depends critically" on information obtained by counsel from the client. *Cf. Strickland v. Washington*, 466 U.S. 668, 691 (1984).  As a result, a prisoner in habeas proceedings must be – and remain – competent, so that he may suggest investigation to conduct and witnesses to interview in developing claims that might warrant a hearing. The case law illustrates how important a competent client's input in an investigation may be. *See, e.g., Johnson v. Secretary, Dep't of Corrections*, 643 F.3d 907, 933 (11th Cir. 2011) (describing case as one "in which counsel failed to adequately investigate what his client did tell him"); *Goodwin v. Johnson*, 632 F.3d 301, 319 (6th Cir. 2011) (finding inadequate investigation by trial counsel after evidentiary hearing, noting that counsel "had little contact with [the client] and his family …"); *Lockett v. Anderson*, 230 F.3d 695, 712 (5th Cir. 2000) (relying, after evidentiary hearing, in part on client's statement that counsel "only met me twice in the entire time he was preparing my cases" to find inadequate investigation).[2]

Although the government is correct that counsel have made progress in the investigation of Mr. Gabrion's petition without his input, this is not the *Gonzales* standard. The standard is whether Mr. Gabrion's claims would *substantially benefit* from his assistance.  It is indisputable that they would.  Mr. Gabrion likely has critical information

---

[2] Should an evidentiary hearing be granted, Mr. Gabrion's competency will be required to participate.  The condemned prisoner has the right to be present for an evidentiary hearing. *See* 28 U.S.C. §2243 (guaranteeing prisoner's right to be present at evidentiary hearing); *Johnson v. Eisentrager*, 339 U.S. 763, 778 (1950) (noting that presence of petitioner at hearing "is inherent in the very term 'habeas corpus' "). This is because, as the Court has acknowledged, "a capital prisoner's testimony or assistance might be crucial to a potentially meritorious habeas claim." *Id.*  If the prisoner is not competent, he will be unable to follow witness testimony, inform counsel if the testimony appears untruthful or inaccurate, propose lines of cross-examination, or, in some cases, take the witness stand and testify himself.

concerning the facts surrounding his conviction, the rape case on which motive is alleged to depend, and the myriad of unadjudicated bad acts that were introduced during his penalty phase.  In addition, Mr. Gabrion has knowledge and insight about his family and relationships that no other person could; he knows his history of substance use and mental health symptomology better than anyone else; and he can offer real-time experience of the events described in the trial record.[3]  He must, however, be competent to understand the significance of these matters and to communicate them effectively.

## II.    Prior determinations of competency should not control this Court's findings today.

Counsel acknowledge the prior competency findings cited by the government in its response.  These findings, however, were made more than fifteen years ago.  In the time since, Mr. Gabrion has been imprisoned on Federal Death Row, in solitary confinement, under conditions that are acknowledged to contribute to mental health deterioration. *See United States v. Fell*, -- F. Supp. 3d --, 2016 WL 7238930, at *18 (D. Vt. 2016) ("It is clear to the court that the process of holding prisoners for indefinite terms extending into decades in solitary confinement is highly damaging."); *see also id.* at *16-17 (describing conditions on Federal Death Row and concluding, "[t]he most troubling result which appears in Dr. Haney's research is the effect of long-term isolation of the type imposed upon death row prisoners.").[4]  The lapse of time since the previous determinations is reason alone to revisit Mr. Gabrion's competency.

Counsel's review of Mr. Gabrion's mental health history – still underway – has revealed other reasons, including:

---

[3] Should the Court request, counsel are prepared (with reasonable notice) to proffer – ex parte – examples of specific matters in these categories on which we seek Mr. Gabrion's assistance.

[4]  The fact that the extended isolation of death row contributes to deterioration of mental health is not meant in any way to suggest Movant has retreated from claims in the amended § 2255 motion that he was incompetent at the time of trial and that his trial counsel failed to effectively litigate his mental health condition.

- Incomplete medical history provided to previous evaluators, revealing extensive chronology of head trauma;

- Incomplete social history available to previous evaluators, including widespread mental illness among family;

- Simplistic and unscientific approaches to the prior evaluations, including failure to consider the possibility of co-occurring disorders and to correctly assess the possibility and extent of malingering.

As discussed below, *see infra* Part IV, further discovery is required before counsel will be able to make a complete presentation on these points.

The conclusion that Mr. Gabrion was malingering is particularly suspect.  Experts recognize not only that malingering is very difficult to identify, but that "[f]eigned and genuine symptoms are often present in the same individuals."  Richard Rogers, Clinical Assessment of Malingering and Deception (3d ed. 2008) [hereinafter "Rogers"] at 39, 49, 51.  There are "a variety of reasons" individuals feign or exaggerate symptoms, many of which are not reprobate.  Even assuming – which counsel do not – that the malingering findings at trial were correct, "[c]linical evaluation of mental disorders should continue even in the presence of malingering and deception."  *Id.* at 50.  Because it is very difficult to maintain feigned symptoms over time, *see* Rogers at 62-63, the persistence of Mr. Gabrion's symptoms some fifteen years after his conviction is itself evidence that he suffers real impairment, justifying an inquiry into his competency to proceed.  Similarly, Mr. Gabrion exhibited severe signs of mental illness, unabated, for decades prior to Ms. Timmerman's death.

**III.    18 U.S.C. § 4241 provides the logical mechanism for evaluating competency and sets a low standard for granting a hearing.**

The government suggests that because the Supreme Court found in *Gonzales* that 18 U.S.C. § 4241 does not create a right to a competency determination in habeas, the framework provided by the statute should not apply when the district court undertakes to consider a petitioner's competency.  *See* Response at 11.  This does not follow.  *See Lafferty v. Bigelow*, 2014 WL 104038, at *3 (D. Utah Jan. 9, 2014) (applying § 4241 procedure in determining habeas petitioner's competency to proceed, post-*Gonzales*).  To the contrary, rather than "reinventing the wheel", the Supreme Court noted in *Gonzales* the wisdom of relying on the criminal code in an analogous context.  *See* 133 S. Ct. at 706 n.11 ("There would have been little point in this Court's directing the District Court to reinvent the wheel when § 4244 already provided a rubric for conducting such a hearing [for a convicted person suffering from a mental disease or defect].") (citing *Rees v. Peyton*, 384 U.S. 312, 314 (1966) (per curiam)).

*United States v. Diaz-Gaudarama*, supports Mr. Gabrion's position, rather than the government's.  There, the defense request for a competency hearing came within a year of the court's most recent finding of malingering, which had been made following two full hearings, and was unsupported by any new evidence.  *See* 2009 WL 6739977, at *1-2 (S.D. Ind. Mar. 13, 2009).  Here, a period of fifteen years has elapsed, no court has ever conducted a hearing at which the government's evidence of malingering may be tested, and counsel will offer new evidence – some of which was available, but never presented, at the time of trial.[5]

---

[5] Counsel note that in *United States v. Donaldson*, also cited by the government, the defense presented no evidence at all and in fact did not contest the government examiner's competency finding.  *See* 2007 WL 708603, at *2 (E.D. Tenn. Mar. 6, 2007).

Under 18 U.S.C. § 4241 – which *Gonzales* suggests should govern here, *see* 133 S. Ct. at 706 n.11 – the Court "shall" hold a hearing to determine the defendant's competency if there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[6]  This is not a high threshold.  *See United States v. Abernathy*, 2009 WL 982794, at *4 (E.D. Mich. 2009) (describing standard as "liberal"). Virtually any evidence calling into question the petitioner's ability to understand or assist in the proceedings due to a mental disease or defect will suffice.  *See United States v. Jackson*, 179 Fed. App'x 921, 931-32 (6th Cir. 2006) (citing numerous examples, including mere representations by counsel, that have been held sufficient).

Counsel have cited numerous indications of Mr. Gabrion's incompetence, each of which suffices to create reasonable cause and require a hearing:

- His irrational conduct during pretrial proceedings, at trial, and during post-conviction, including the multiple pleadings he has filed in this Court in recent months;

- Witness testimony, which counsel can supplement based on post-conviction investigation, about his erratic behavior for decades prior to the offense;

- His inability to engage in communication with counsel about his case, even with substantial direction; and

- His insistence that he is competent to proceed, despite the concerns of counsel.

In combination, they surely exceed the "reasonable cause" threshold.

---

[6] The government offers no basis for its assertion that the higher burden for establishing post-hoc, substantive incompetence at trial should apply here.

**IV.    Discovery is necessary before a competency hearing may proceed.**

It appears that a focus of any competency proceeding will be the extent to which Mr. Gabrion is malingering.  In order to address this question, Mr. Gabrion renews the discovery requests made in his "Amended Brief to Conduct Discovery (PageID2604)[7] – as relates to this issue, the requests made in paragraphs 1 (materials provided to Dr. Griesemer),10 (Psychology Data Systems records),14 (housing records),15 (Social Security disability materials) and 23 (records maintained by probation re: Social Security), all of which are concerned with Mr. Gabrion's impairment.  He also reasserts his request to take depositions of Dr. Gregory Scharre, Dr. Newton Jackson, Dr. David Greisemer, Dr. Thomas Ryan, Dr. Gregory Saathoff, and Dr, Waalkes.  *See* Motion for Leave to Conduct Depositions on Oral Examination (PageID 2563) and Brief in Support of Motion for Leave to Conduct Depositions on Oral Examination (PageID 2565).

We further request that the following information be provided, so that the integrity of the government's malingering diagnosis may be assessed:

a)  Full PET scan performed for trial;

b)  EEG performed by Dr. Mauger, referenced in FMC-Springfield evaluations;

c)  All sources provided to government evaluators, as cited in their reports;

d)  Raw data from testing performed by all government evaluators, including Ryan, Frank, and DeMeir;

e)  Results of labwork referenced in Khan/Chadhoury exam;

f)  Medical records related to staph infection of ear reported by DeMeir;

---

[7] These requests were filed in March of 2016.  On September 20, 2016, the Court issued an order indicating it would "deny the discovery motions without prejudice, but will consider Movant's discovery requests in connection with a review of his claims" (PageID 2635).  In the Court's view, it had to "examine the claims Movant has raised in his motion for relief under § 2255 before determining whether he has established good cause for discovery. . . ." (PageID 2635). If after reviewing the claims, the Court determined additional factual development of a particular claim would entitled Movant to relief, the Court said it would permit discovery on that issue.  This never came to pass.

g) Memos, notes and recordings by all evaluators related to evaluations, including collateral interviews, and any drafts thereof (DeMeir, Khan, Chadhoury, Denney, Fallis, Frank, Griesemer, Jackson, Ryan, Saathoff);

h) Video-recordings of Gabrion from 2001 FMC Springfield evaluation, referenced in DeMeir report; and

i) Records from USP-Terre Haute – whether contained in Mr. Gabrion's file or maintained elsewhere – describing in any manner Mr. Gabrion's behavior while on the Special Confinement Unit.

Finally, we request permission to take the depositions of the following mental health professionals who examined Movant prior to trial and whose reports and opinions were relied upon by the Court and by the testifying doctors even though they themselves did not testify:

a) Dr. Richard L. DeMier, PhD (report issued October 22, 2001);

b) Dr. Mahmood H. Chadhoury, MD (report issued August 28, 1002);

c) Dr. Steven M. Otto, M.D, (report issued September 18, 2001;

d) Dr. Robert L. Denney, Psy.D. (report issued October 10, 2001);

e) Dr. Emily Fallis, PhD. (report issued May 8, 2000); and

f) Dr. Cathy Frank, M.D. (report issued June 18, 2001).

**CONCLUSION**

The law recognizes that defense counsel may have "the best-informed view" of the defendant's competency. *See Medina v. California*, 505 U.S. 437, 450 (1992). *See also Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir.1999) ("Defense counsel is often in the best position to determine whether a defendant's competency is questionable."); *Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir.1996) (same). We request that the Court provide the opportunity for a full investigation and hearing of the issues we have identified.

10

**Date:  May 23, 2017**

By: /s/ Monica Foster
      Monica Foster
      Attorney for Movant
Business Address:
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520


By:  /s/ Scott Graham
      Scott Graham
      Attorney for Movant
Business Address:
SCOTT GRAHAM PLLC
1911 West Centre Avenue, Suite C
Portage, MI 49024
(269) 327-0585

**Respectfully submitted,**

By: /s/ Joseph M. Cleary
      Joseph M. Cleary
      Attorney for Movant
Business Address:
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520